### TURNER CONST. CO. v. UNION TERMINAL CO. et al.

(Circuit Court of Appeals, Fifth Circuit. January 18, 1916.)

No. 2759.

CORPORATIONS ☞659 — FOREIGN CORPORATIONS — CONTRACTS — NONCOMPLIANCE WITH STATUTE.

Act Fla. June 1, 1907 (Laws 1907, c. 5717), provides that every contract made by or on behalf of any foreign corporation, affecting its liability, or relating to property within the state before it shall have complied with the provisions thereof, shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them. A foreign corporation entered into a building contract before it had complied with the statute by filing a copy of its charter or articles of incorporation, and obtaining a permit to do business, but pending the performance of the contract the statute was complied with, and thereafter, as the dealings between the parties progressed, each party invoked the written contract as the basis of the rights and obligations asserted and recognized by them. *Held*, that this amounted to an adoption of such instrument as the evidence of the contract under which the dealings were carried on, and estopped the other party to the contract to set up a lack of right in the foreign corporation to claim under it, since, though the contract was unenforceable when made, the foreign corporation, after complying with the statute, could acquire rights theretofore ineffectually contracted for by the operation in its favor of an estoppel, or by joining with the other party in adopting, as the evidence of a subsisting contract between them, the written instrument previously signed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2561, 2562; Dec. Dig. ☞659.]

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Bill by the Turner Construction Company against the Union Terminal Company and others. From a decree dismissing the bill, plaintiff appeals. Reversed.

Sam R. Marks and Richard P. Marks, both of Jacksonville, Fla., for appellant.

P. H. Odom and J. T. G. Crawford, both of Jacksonville, Fla., for appellees.

Before PARDEE and WALKER, Circuit Judges, and NEWMAN, District Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. The bill in this case, filed September 19, 1913, and which sought the enforcement of a builder's or mechanic's statutory lien, alleged the execution by the plaintiff, a New York corporation, and the defendant Union Terminal Company (hereinafter referred to as the owner), of a written contract for the construction by the former for the latter of a building, a copy of which contract, dated November 21, 1912, was made an exhibit to the bill; that shortly after the date of that instrument, to wit, on the 10th day of December, 1912, and in compliance with the terms of that instrument, the plaintiff commenced the work of construction, and proceeded with it, furnishing all necessary material and labor, until the building was completed in July, 1913; that from time to time during the course of the work and in accordance with the contract provisions the plaintiff submitted to the owner statements and estimates of the amounts due and to become due for labor and materials under the contract, and from time to time during the course of the work the owner paid to the plaintiff various sums, aggregating $140,695.89, but that there is still due and owing to the plaintiff a large balance, to wit, $81,046.40. The owner's amended answer to the bill averred, in addition to other matters of defense and of set-off, that the plaintiff—

"is a corporation for profit, organized and existing under the laws of the state of New York; that the contract upon which recovery is sought in this suit affects the liability of said complainant; that said complainant was not transacting business in the state of Florida on or before the 1st day of June, 1907; that said complainant has not filed in the office of the Secretary of State of the state of Florida a duly authenticated copy of its charter or articles of incorporation; that said complainant has not received from the Secretary of State a permit to transact business in the state of Florida."

The evidence in the case was taken while the pleadings were in the condition above indicated. It was disclosed by that evidence that on the 11th day of January, 1913, the Secretary of State of Florida issued a permit to plaintiff showing a compliance by it with the provisions of the act of the Legislature of Florida, approved June 1, 1907 (Acts of 1907, c. 5717), entitled "An act to prescribe the terms and conditions upon which foreign corporations for profit may transact business, or acquire, hold or dispose of property in this state"; and it was also disclosed by the evidence that the conduct of both the plaintiff and the owner while the work on the building was progressing after January 11, 1913, unequivocally showed that each of them was relying on the written instrument which they had signed as embodying the contract by which their dealings were governed. After the evidence was closed, the owner was permitted, over objections made by the plaintiff, so to amend its answer as to set up the plaintiff's noncompliance with the requirements of the statute above mentioned until after the date of the contract and the commencement of the work thereunder. With the objections to this amendment the plaintiff submitted also a motion to strike it, if allowed; one of the grounds stated in that motion being the following:

"Defendant, having allowed complainant to proceed, and having accepted the benefit of the contract, with full knowledge of all material facts, is now estopped to present the defense sought to be interposed."

Following the expressed conclusion of the court that the contract relied on by the plaintiff was void under the statute, a decree dismissing the bill was entered.

The statute above mentioned provides that:

"Every contract made 'by or on behalf of any foreign corporation affecting its liability or relating to property within the State before it shall have complied with the provisions of this Act shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

It may be conceded that an effect of this provision was to prevent the acquisition by the plaintiff of any enforceable right as a result of the signing of the instrument on November 21, 1912, and that no right thereunder could have accrued to it prior to its compliance with the statute. But its compliance with those requirements and the issue of the permit to it on January 11, 1913, effectually removed its disability to acquire contractual rights in Florida. Thereafter its capacity to contract in that state was not subject to the restriction imposed by the statute referred to. Its power in this regard could be exercised in any way by which a valid contract may be made. It could acquire rights theretofore ineffectually undertaken to be contracted for by the operation in its favor of an estoppel upon the party dealt with to deny the existence of such rights, or by joining with that party in adopting as the evidence of a subsisting contract between them the instrument which, when it was signed, did not, because of a statutory prohibition, confer any enforceable right on the plaintiff. The contract, so far as the statute made it void, could not be ratified with the result of giving it validity from the time it was undertaken to be made; but after both the parties were free of any disability they could make a new contract and recognize the instrument already signed as embodying the terms of it. Williams v. Morris, 95 U. S. 444, 457, 24 L. Ed. 360; Wald's Pollock on Contracts (3d Ed.) 621, 791.

The evidence adduced clearly showed that, as the dealings between the plaintiff and the owner progressed after the date of the permit issued to the former, each of them invoked the written instrument they had signed as the basis of the rights and obligations that were asserted and recognized. The owner's conduct during that period was equivalent to a continuing assertion by it that the contract which the instrument expressed was in existence and that the reciprocal rights and obligations of the parties were governed by it. The conduct of the parties to the dealings subsequent to the issue of the permit had the effect of an adoption by them of the instrument they had signed as the evidence of the contract under which the dealings were carried on and of estopping the owner to set up a lack of right in the plaintiff to claim under it.

Before the allowance of the last-mentioned amendment, the only allegation of the owner's answer as to a noncompliance by the plaintiff with the Florida foreign corporation statute was one which was not supported by the evidence adduced. Without further pleading by the plaintiff, that allegation was to be deemed to be denied by it. Equity Rule 31 (198 Fed. xxvii, 115 C. C. A. xxvii). The averments of the bill were such as to show that the demands asserted by it were

based, not alone upon the execution of the written instrument which was made an exhibit to the bill, but also on what was averred to have occurred between the plaintiff and the owner throughout the period when the work mentioned was in progress—from its commencement in December, 1912, until it was completed in July, 1913. And the evidence adduced so far supported those averments as to show that the plaintiff acquired enforceable rights as a result of what happened after the permit was issued to it. The averments of the last-mentioned amendment to the answer failed to show that the plaintiff was under a disability to acquire contractual rights throughout the period in which the averments of the bill and the evidence supporting them showed that such rights were accruing to it. In other words, the averments of that amendment did not show the existence of a state of facts constituting a defense to the bill as a whole. The sufficiency of the defense set up by that pleading was properly tested by a motion to strike out. Equity Rule 33 (198 Fed. xxvii, 115 C. C. A. xxvii). The conclusion is that the court was in error in its rulings to the effect that the state of facts set up by that amendment constituted a defense to all the demands asserted by the bill and supported by evidence.

It follows that the decree appealed from should be reversed; and it is so ordered.