## PRODUCERS' NAVAL STORES CO. et al. v. McALLISTER.*

### In re BLUE CREEK CO.

(Circuit Court of Appeals, Fifth Circuit. January 25, 1922.)

No. 3733.

1. **Corporations �köö657(7)—Contract by foreign corporation without Florida permit is voidable only.**

Under Laws Fla. c. 5717, as enacted in 1907, requiring foreign corporations to secure permits to do business within the state, a mortgage given by a domestic corporation to a foreign corporation which had not secured a permit, if it can be held a contract relating to property within the state under the terms of that act, is voidable only, and not void, under the construction placed on the act by the Supreme Court of Florida.

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 257 U. S. —, 42 Sup. Ct. 383, 66 L. Ed. —.

2. **Corporations ⬦641—Legislature can validate voidable mortgage to foreign corporation.**

Where a mortgage is voidable only, and not void, because the mortgagee had no permit to do business within the state, the Legislature had power to validate the mortgage.

3. **Statutes ⬦113(1)—Title to act validating voidable contracts of foreign corporation held sufficient.**

The title to Laws Fla. c. 6875, enacted in 1915, "An act to remove under certain conditions invalidity created by chapter 5717 of contracts made by foreign corporations," is sufficient under Const. Fla. art. 3, § 16, to express the subject of the act, which purported to remove the invalidity of the designated contracts.

4. **Statutes ⬦113(4)—Title to act amending three sections of other act is sufficient.**

The title to Laws Fla. c. 6876, enacted in 1915, "An act to amend sections 1, 4 and 7" of an act of 1907, is sufficient.

5. **Corporations ⬦659—Conveyance expressly subject to voidable mortgage validates mortgage.**

If a mortgage given to a foreign corporation prior to the enactment in 1915 of Laws Fla. cc. 6875, 6876, was voidable at the option of the mortgagor, it was validated by a conveyance by the mortgagor, after the enactment of those statutes removing the disability of the mortgagee, joining in a conveyance of certain rights of way over the mortgaged lands, reciting that the lands were subject to the mortgage lien.

6. **Mortgages ⬦497(1)—Foreclosure after failure to assert defense making voidable is conclusive.**

Even if a mortgage is voidable at the option of mortgagor, a decree for foreclosure and sale, entered after the mortgagor had failed to assert the defense in foreclosure suit, is conclusive on all the parties to that suit.

7. **Bankruptcy ⬦188(1)—Sale under voidable mortgage, validated by bankrupt, held good against trustee.**

Even if a mortgage given by the bankrupt was voidable when executed, the trustee in bankruptcy cannot have a sale thereunder set aside where, more than four months before the bankruptcy, the mortgage had been validated, either by a conveyance expressly subject thereto or by failure to assert the defense in a foreclosure suit, though the decree of foreclosure and the sale thereunder were subsequent to the bankruptcy.

Appeal from the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Suit by Felo McAllister, as trustee of the estate of the Blue Creek Company, bankrupt, against the Producers' Naval Stores Company and others. Decree for complainant, and defendants appeal. Reversed, with directions to dismiss the bill.

William L. Clay, Samuel B. Adams, and A. Pratt Adams, all of Savannah, Ga., William H. Baker, of Jacksonville, Fla., and William B. Stephens, of Savannah, Ga., for appellants.

Sam R. Marks, of Jacksonville, Fla., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. February 28, 1914, the Blue Creek Company, a Florida corporation, executed its negotiable notes, aggregating $200,000, and a mortgage upon lands in Florida to secure the same,

to the Producers' Naval Stores Company, a Georgia corporation. The mortgage contained a covenant that the mortgagee should have the right to assign it to a trustee. March 28, 1914, the Producers' Naval Stores Company indorsed the notes and assigned the mortgage to the Citizens' & Southern Bank of Savannah, a Georgia corporation, as trustee, for the equal benefit of the holders of the promissory notes. The Blue Creek Company, for the purpose of evidencing its assent to the trust created, joined in the execution of the assignment of the mortgage. The notes were executed, indorsed, and delivered, and the mortgage and assignment thereof were executed and delivered, at Savannah. July 14, 1917, the Blue Creek Company granted certain rights of way and privileges on the mortgaged lands to one Rentz and to the Carpenter-O'Brien Company by an instrument under seal, which recited that:

"The lands of the Blue Creek Company are subject to the lien of the mortgage held by the Citizens' & Southern Bank of Savanah, Ga., as the owner and holder of the indebtedness secured by such mortgage."

December 30, 1917, the Citizens' & Southern Bank of Savannah instituted foreclosure proceedings in the proper state court of Florida. March 11, 1918, a final decree of foreclosure was rendered, under which a sale of the mortgaged property was made on May 6, 1915, to Courtney Thorpe, and thereafter the sale was approved and confirmed by the state court. May 3, 1918, a petition in bankruptcy was filed against the Blue Creek Company, and at the same time application to enjoin the foreclosure sale was denied by the court below.

February 24, 1919, appellee, as trustee in bankruptcy of the Blue Creek Company, filed its suits against the appellants, Producers' Naval Stores Company, Citizens' & Southern Bank of Savannah, and Courtney Thorpe, purchaser at the foreclosure sale, praying that the mortgage and assignment thereof, the decree of foreclosure, and special master's deed, all be declared null and void, and that Thorpe be required to execute a deed to appellee, and thereby remove from the record title the apparent cloud upon it. After the taking of evidence, a final decree was entered granting the relief prayed, and canceling the mortgage and the deed to Thorpe as clouds upon appellant's title.

The decree of the District Court, holding void the mortgage and the foreclosure proceedings had thereunder, is based upon chapter 5717, Laws of Florida, enacted in 1907 (Comp. Laws 1914, § 2682a et seq.). Sections 1, 4, and 7 of that statute were amended by chapter 6876, approved June 4, 1915. Section 1 was as follows:

"That no foreign corporation shall transact business or acquire, hold or dispose of property in this state until it shall have filed in the office of the secretary of state a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this state."    •

It was amended by adding:

"And any foreign corporation which shall violate the provisions of this section shall render itself, its officers and agents severally liable to the penalties and fines provided in section 8 of this act, but no violation of this act

shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof."

Section 4 was as follows:

"Every contract made by or on behalf of any foreign corporation affecting its liability or relating to property within the state before it shall have complied with the provisions of this act shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

It was amended to read:

"That the failure of any such foreign corporation to comply with the provisions of this act shall not affect the validity of any contract with such foreign corporation, but no action shall be maintained or recovery had in any of the courts of this state by any such corporation, or its successors or assigns, so long as such foreign corporation fails to comply with the provisions of this act."

Section 7 was as follows:

"A foreign corporation is defined to be a corporation incorporated by or under the laws of any other state or territory or of any other country."

It was amended by adding:

"But nothing in this act shall apply to or include banking or trust companies incorporated under the laws of any other state, territory or other country."

Other sections of the act of 1907 provide that the secretary of state shall issue permits to foreign corporations to transact business in the state, upon the filing by them of their charters or articles of incorporation, and the payment by them of the charter fees required of domestic corporations, and that foreign corporations which transact business or fail to pay charter fees and secure permits shall be punished by fine or imprisonment.

By chapter 6875, approved June 5, 1915, it was further enacted that "the invalidity created by chapter 5717, Laws of Florida 1907," should be removed as to contracts of foreign corporations which should comply within a specified time with the requirements relating to the securing of permits and the payment of charter fees. The invalidity of conveyances of real property to foreign corporations, as to trustees and as to grantees of such corporations who were innocent purchasers for value, is removed unconditionally, and therefore, in the absence of a compliance with the requirements to secure permits and pay charter fees by the offending corporations.

[1] The Supreme Court of Florida has held that contracts made by foreign corporations in violation of the provisions of chapter 5717 are voidable, and not void. In Commercial Bank v. Jordan, 71 Fla. 566, 71 South. 760, that court, in construing this statute and in reviewing its former decisions, used the following language:

"The statute does not in express terms declare that all contracts, notes or other securities, made by or on behalf of any foreign corporation before it shall have complied with the statutory requirements shall be absolutely void or of no effect whatsoever, nor did this court in the Ulmer Case, 61 Fla. 460, 55 South. 405, hold that such was the legislative intention. The language of the court was: 'If the statute has been violated by the foreign corporation in acquiring the note or in making a contract of which the note is a part, the corporation cannot enforce the payment of the note in the courts of the state;

and if the note was taken by the indorsee bank with notice of and subject to its infirmities under the existing laws the bank cannot recover through the courts.'

"In the case of Campbell v. Daniel, 68 Fla. 282, 67 South. 90, this court, having under consideration the same statute and speaking through Mr. Justice Cockrell, said: 'The statute does not forbid the municipality or any citizen of the state entering into a contract with a nonregistered foreign corporation; to the contrary the statute in terms permits the enforcement of the contract on its behalf.' Here the essential difference beween a void and a voidable contract was pointed out. The clear legislative purpose was to render such contracts unenforceable in the hands of the corporation or its assigns, but enforceable against it or them. The use of the word 'void' in the statute in connection with those following necessarily conveys a meaning different from what would have been the word's significance had it stood alone. While the statute uses the word 'void,' it describes a 'voidable' contract."

[2] Giving effect to the rule announced by the highest court of the state, and conceding for the purposes of this case that a mortgage is a contract relating to property within the state, it follows that the mortgage here involved was not void, but only voidable. The mortgage being only voidable at most, the power of the Legislature to validate it is not open to serious question. Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; West Side R. R. Co. v. Pittsburgh Construction Co., 219 U. S. 92, 31 Sup. Ct. 196, 55 L. Ed. 107; Pensacola & Atlantic R. R. Co. v. State, 45 Fla. 86, 33 South. 985, 110 Am. St. Rep. 67.

[3] It is equally clear that the Legislature, by the amendatory acts of 1915, intended to exercise its power of validating contracts which were voidable under the act of 1907. Section 16 of article 3 of the Constitution of Florida requires the subject of an act of the Legislature to be expressed in its title. Chapter 6875 is entitled:

"An act to remove, under certain terms and conditions, the invalidity created by chapter 5717, Laws of Florida 1907, as to certain classes of contracts heretofore made to, by or in behalf of any foreign corporation."

The act itself purports to remove the invalidity theretofore existing in notes, deeds, and other conveyances of real property, and contracts generally. The terms and conditions mentioned in the act refer to securing permits and paying charter fees required by the earlier act within a specified time. No terms and conditions, as already stated, are imposed as to conveyances of real property, the title to which has been or shall thereafter be acquired by innocent purchasers for value.

[4] Chapter 6876 is entitled "An act to amend sections 1, 4 and 7" of the act of 1907. The amendment to section 1 undertakes to make valid the title to property, though acquired, held, or disposed of in violation of the original act. Section 4, which is directly involved in this case, was entirely changed, so as to provide specifically that a violation of the act as amended should not affect the validity of any contract, and it was provided that no action should be maintained in any of the courts of the state by a foreign corporation so long as it should fail to comply with the provisions relating to the securing of permits and the payment of charter fees. It was undertaken to relieve banks and trust companies entirely from a compliance with the

provisions, terms, and conditions upon which business might be transacted or contracts made in the state of Florida.

Limiting our observations to the case before us, we are of opinion that the intention of the Legislature, as expressed in the amendatory acts, was made effective to accomplish the purposes sought. No reason is suggested for a different conclusion, unless the mortgage is held to be absolutely void and incapable of validation. It is suggested, however, that the Citizens' & Southern Bank of Savannah has never secured a permit to do business, or filed its charter with the secretary of state. But it was relieved from doing that, as a bank under chapter 6876, and as an innocent purchaser under chapter 6875.

[5] We are of opinion, therefore, that after the passage of the acts of 1915 the mortgage constituted a valid lien upon the real property which the trustee in bankruptcy claims as an asset of the bankrupt estate. If, however, there remained anything voidable in it, the mortgagor ratified the mortgage by joining the Citizens' & Southern Bank in the execution of an instrument under seal conveying certain rights of way over the mortgaged lands to Rentz and the Carpenter-O'Brien Company. The instrument recited that the lands were then subject to the lien of the mortgage. It was held by this court in Turner Construction Co. v. Union Terminal Co., 229 Fed. 702, 144 C. C. A. 112, in construing the right of a foreign corporation under the act of 1907, here involved:

That "after both the parties were free of any disability they could make a new contract and recognize the instrument already signed as embodying the terms of it."

[6] But, if it be conceded that, when the suit was brought to foreclose the mortgage, a successful defense could have been interposed by the mortgagor, upon the ground that the mortgage continued to be voidable, a failure to assert such defense concluded its right thereafter to attack the foreclosure proceedings. The state court in which the foreclosure was had was a court of general jurisdiction, and its decree became binding upon all the parties to the suit.

[7] The trustee in bankruptcy acquired no rights additional to those possessed by the bankrupt. It is not correct to say that the lien of the mortgage was created within four months of the bankruptcy proceedings. In any view of the case, the lien of the mortgage attached more than four months before the filing of the petition in bankruptcy, and was not affected thereby. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122. Our conclusion is that appellee is not entitled to the relief prayed, or to any relief.

The decree of the District Court is therefore reversed, with directions to dismiss the bill of complaint.