**SCHOLZ HOMES, INC., Plaintiff-Appellee,**

v.

**Lavern E. LARSON and Roger E. Kilby, Defendants-Appellants.**

**No. 16504.**

United States Court of Appeals Seventh Circuit.

May 14, 1969.

Rehearing Denied July 3, 1969.

---

**344**

William E. Lucas, Warren C. Horton, Keith K. Nicolls, Paul M. Smith, Jr., Chicago, Ill., for defendants-appellants.

Lawrence Mills, Robert J. Garrett, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff Scholz Homes, Inc., an Ohio corporation, granted a franchise and sold an inventory of materials to Pacific Fabricated Structures, Inc., a California corporation, referred to by the parties as FABSCO, organized by Bernard Perry and Bruce Kilby. The contract was signed August 19, 1960, a few days after incorporation of FABSCO. In 1962 plaintiff Scholz brought this action [1] against Lee (Lavern E.) Larson and Roger Kilby, father of Bruce Kilby.

Larson and Roger Kilby had subscribed for stock in FABSCO before its organization, and plaintiff Scholz alleged that

it relied on these subscriptions. Neither Larson nor Roger Kilby paid in any capital. Count I alleged fraud in certain particulars, and Count III alleged breach of contracts of which plaintiff was third party beneficiary.[2]

In May, 1965, there was a lengthy trial before the late Senior District Judge Fred L. Wham, without a jury, on the issue of liability only. Judge Wham became ill before reaching a decision. The parties stipulated to proceed to disposition before Chief Judge Campbell on the record made before Judge Wham.

July 15, 1966 Judge Campbell found defendants liable on Count I (fraud) and stated that he made no decision with respect to Count III (contract). The issue of damages was later tried, and on July 13, 1967, judgment was entered in favor of plaintiff Scholz for $99,955.81 and costs. Defendants appealed.

Before August, 1960, Scholz had a branch in Long Beach, California, engaged in making and selling prefabricated homes and other structures. In July, 1960, Burke, vice president of Scholz, conducted negotiations with Bruce Kilby and Perry. They contemplated sale of Scholz's California assets to a corporation to be organized by Bruce Kilby and Perry.

FABSCO was incorporated August 15, and the contract signed August 19. Scholz granted FABSCO an exclusive franchise to manufacture and sell prefabricated house packages under the Scholz trade name in California and several other states and FABSCO promised to pay royalties. The contract also provided for sale of Scholz's Long Beach inventory and related assets to FABSCO for $120,000. Temporarily the proceeds of sales were to be accumulated in escrow, and Scholz was to be paid $25,000 out of this fund. Scholz received notes for $20,000 and $37,500. The agreement does not specify how the remaining $37,-500 was to be paid, but this appears to

1. Jurisdiction is founded on diversity. The parties agree that California law controls substantive issues.

2. Bruce Kilby was named a defendant and Count II ran only against him. He was never served.

have been accomplished by a cancellation of that amount of indebtedness owed by Scholz to Signal Lumber Co. Signal had had transactions with Scholz, was its landlord, and was to be the landlord of FABSCO.

Scholz acknowledges that the entire purchase price was ultimately paid, except for the $20,000 note. FABSCO later went out of business and Scholz's damages claimed in this action included unpaid royalties and payments Scholz made under a guaranty it gave to a concern which rented trucks to FABSCO.

The contract included a number of attachments. The formally executed portion included a representation that FABSCO had $40,000 in its bank account and a provision that Bruce Kilby and Perry would deliver a letter stating that FABSCO would have at least $100,000 paid-in capital, including $40,000 cash. One of the attachments was a letter addressed to Scholz and Signal Lumber Co., signed by Bruce Kilby and Perry, guaranteeing that when permitted by the securities commissioner, FABSCO "will receive forthwith paid-in capital of $100,-000.00 including at least $40,000.00 in cash and the $60,000.00 White truck deposit." The letter also represented that in addition Bruce Kilby and Perry had secured the signature of two individuals (unnamed, but undoubtedly Larson and Roger Kilby) on a pre-incorporation subscription agreement for stock at a total price of $25,000, each.

Defendants rely on the inconsistency between the body of the contract and the attached letter, as well as other evidence, to support their claim that it was Signal Lumber Company and not Scholz who insisted on raising the paid-in capital requirements to $150,000, and that Scholz did not rely on the Roger Kilby and Larson subscriptions. The district court found that Scholz did rely.

There is evidence to support the finding and the finding is not clearly erroneous.

Although Judge Campbell did not have the advantage of observing the witnesses on the stand, he necessarily judged credibility, from the record, and drew inferences. The formula of "unless clearly erroneous" expresses as well as any other the depth of prima facie validity which must be attributed to findings in situations such as developed here.[3]

On August 4 and 5, 1960 Perry had gone to Chicago and obtained the signatures of Larson and Roger Kilby on the pre-incorporation subscription agreement. As required by the California law, the agreement was made upon condition (1) that the corporation be incorporated within 90 days (which was fulfilled) and (2) that the corporation apply for and secure a permit authorizing the issuance of the shares "conditionally subscribed for." These conditions were known, of course, to Scholz. Each signer indicated that he was subscribing for 25,000 shares for a total purchase price of $25,000. Although the body of the agreement referred to payment "in cash or in services, as hereinafter set forth," the testimony indicated the payment was to be in cash, FABSCO, by resolution and its application to the California Commissioner of Corporations, treated the subscription as an agreement to pay cash, and the commissioner apparently took the same view.

On September 29 FABSCO applied for a permit to issue 250,000 shares: 50,000 shares for cash pursuant to the Larson and Roger Kilby agreement; 120,150 shares for cash to various persons, including the Kilbys, Perry, Larson, and Ballantyne of Signal Lumber Co.; 39,-850 shares to the Kilbys for assignment of their contract with Economy Truck Sales & Services, Inc.; and 40,000 shares as promotional stock to the Kilbys, Perry, and Ballantyne, from time to time as other shares were sold for cash or other property.

3. See United States v. Aluminum Co. of America (2d Cir., 1945), 148 F.2d 416, 433; but see Carter Oil Co. v. McQuigg (7th Cir., 1940), 112 F.2d 275, 279; Orvis v. Higgins (2d Cir., 1950), 180 F.2d 537; Moore, Federal Practice sec. 52.04, p. 2642 (2d ed. 1968).

The commissioner took the position that it would be unfair to use the pre-incorporation subscription agreement of Roger Kilby and Larson because it failed to disclose that FABSCO proposed to issue other shares for consideration other than cash (apparently the shares to be issued for the truck contract and the promotional shares). In order to meet this objection, FABSCO's attorney prepared letters to Larson and Roger Kilby releasing them from their subscription agreement, but stating that the shares "will be available for you" when the permit was granted. Roger Kilby received his letter. Larson did not, although he was apparently told in a later conversation that the permit had not been issued. Copies of both letters, dated October 5, were filed with the commissioner.

On October 14, 1960, the commissioner issued a permit authorizing sale and issuance of 170,150 shares for cash to listed individuals, including Larson and Roger Kilby, 39,850 shares to the Kilbys in exchange for their truck contract, and 40,000 shares to the Kilbys, Perry, and Ballantyne for promotional services. Issuance of the latter two blocks was subject to various conditions such as waiver of dividends. None of the shares was to be issued except to an approved escrow holder, subject to further order of the commissioner. An escrow holder was approved but no shares were ever issued, for cash or otherwise.

Months later there were separate negotiations with Roger Kilby and Larson about one or the other investing substantial amounts in FABSCO in order to make it viable. Each decided not to invest. The negotiations with Roger Kilby took place in February and September, 1961, with Larson in April, 1961.

Never having any capital, FABSCO ultimately collapsed. Its remaining inventory was turned over to another company in late 1961, and was destroyed in a fire. The latter company became bankrupt.

The district judge correctly found that the condition of the subscription agreement requiring incorporation within ninety days was fulfilled. He misconstrued the second condition as requiring only a diligent application for a permit, and found that had been met. The statute, as well as the agreement, however, required that the permit be secured. As we read the commissioner's file, the October 14 permit was issued only after the application was amended to disclose that Roger Kilby and Larson were released from the subscription agreement, because the commissioner considered enforcement of it unfair to them. Thus the second statutory condition of the subscription agreement was never fulfilled.

■ If, under the law of California, the subscription agreement should retain a limited vitality in favor of Scholz, as a third party who acted in reliance upon it,[4] it would not be a basis for liability under Count I which is before us on this appeal. For our present purpose, we deem it clear that since FABSCO was compelled to release Roger Kilby and Larson from their contractual obligation as a condition of obtaining a permit, their failure to perform it can not support any inference that they did not intend to perform when they signed it. No such inference can be drawn from the later refusals of each to invest a greater amount on different terms under changing circumstances.

The fraud, alleged and found, arises out of three claims: (1) Larson's lack of intent to perform the subscription agreement, (2) Roger Kilby's similar lack of intent, and (3) Roger Kilby's responsibility for Bruce Kilby's misrepresentation of the nature and value of the Economy truck contract. We shall deal separately with each.

---

4. See Moore v. Moffat (1922), 188 Cal. 1, 204 P. 220; California Western Holding Co. v. Merrill (1935), 7 Cal.App.2d 131, 46 P.2d 175; Winton, Private Corporate Stock Subscription Agreements, 33 Southern California Law Review 388, 394 (1960).

(1) *Larson's lack of intent to perform.* The district court relied upon a portion of the definitions of fraud and deceit in the Civil Code of California: "A promise, made without any intention of performing it." [5]

■ The district court found that when Larson signed the subscription agreement he lacked the intention to perform it, and thus defrauded Scholz, who relied. This finding is clearly erroneous.

Larson and Perry, at the time Larson signed the subscription agreement, agreed in substance that Perry would take the stock for which Larson subscribed, paying for it with funds which Larson would make it possible for Perry to borrow. Larson would have an option to buy the stock from Perry within three years. Larson was financially responsible, and promised to endorse Perry's note.

Larson and Perry did not disclose this side agreement. The only real inconsistency, however, between the side agreement and the subscription agreement was whether Larson would hold the stock in his own name. There was evidence that Ballantyne and Roger Kilby wanted Larson personally involved because of his experience in the business. But Scholz had no interest in Larson's personal involvement and his arrangement not to take stock in his own name was immaterial to Scholz. In fact Scholz had once expressed a preference that the money be obtained from some other source because Larson's company was a competitor of Scholz. $25,000 borrowed by Perry with Larson's help and paid into FABSCO were just as good for Scholz's purposes as $25,000 paid in by Larson for stock in his own name. There is nothing to indicate that Larson thought he would not be bound if for some reason Perry backed out.

The fraud finding as to Larson must be reversed.

(2) *Roger Kilby's lack of intent to perform.* The district court found, as Roger Kilby admitted, that Roger Kilby's subscription was made upon condition (orally agreed to between him and Perry) that Roger Kilby "be named a director of the corporation and that he first be given the opportunity to review the assets and operation of the corporation, conditions not disclosed in the subscription agreement." The court found therefrom "an absence of present intention to perform the subscription promise, when that promise was made", and hence that Roger Kilby defrauded Scholz.

■ Presumably the reservations orally agreed upon between Roger Kilby as subscriber and Perry as promoter would have been ineffective as a defense in an action brought to enforce the written subscription. Nevertheless nondisclosure would be material. Even if the oral reservations were legally ineffective, it is most improbable that Scholz would have relied on Roger Kilby's written subscription agreement if advised of the oral reservation.

■ The district court found that at the time of signing Roger Kilby was fully informed that virtually all the assets of FABSCO would be purchased from Scholz for $120,000 and that the initial capital, including his subscription, would be $150,000. There is evidence to support the finding, and it is not clearly erroneous. The same is true, as already noted, of the finding that Scholz relied. The determination that Roger Kilby was liable for fraud with respect to the subscription agreement will be affirmed.

(3) *The nature and value of the Economy truck contract.* The Kilbys, father and son, had previously been engaged in a contracting business. As a result they jointly owned certain construction equipment. Roger Kilby knew of Bruce Kilby's plans to go into business in California, and believed that trucks would be needed.

On June 23, 1960, the Kilbys signed a contract with Economy, a dealer in White trucks. The Kilbys agreed to buy four diesel tractors for a total price of $64,716. Economy agreed to take Kil-

5. Secs. 1572(5) and 1710(4).

bys' used equipment in trade, and allow $39,850 for it. There is no question but that Bruce Kilby had Roger Kilby's authority to use the asset represented by this contract in the FABSCO business. Roger Kilby testified that he and Bruce intended to pay Economy the $25,000 balance required in order to complete the purchase of trucks.

■ The district court found that Bruce Kilby misrepresented the truck credit as having a value of $60,000. There is ample evidence to support the finding. Bruce Kilby and Perry described the credit to Scholz as $68,000 "money on deposit" with Economy and, later, as $60,000 "White truck deposit". Before the agreement of August 19, 1960, it was decided that FABSCO would rent trucks from the Ryder company, as Scholz had done, and that it would be necessary to liquidate the truck credit with Economy. Bruce Kilby and Perry continued to represent that it had a value of $60,000.

The material difference between the value of a contract for the purchase of unneeded trucks at a price of $64,000 subject to an agreed trade in allowance of $39,850 for used equipment, and a deposit worth $60,000 is obvious. The difference was at least partially reflected, without Scholz's knowledge, in FABSCO's application to the commissioner, where $39,850 was the value assigned to the truck credit. The facts were not explained to Scholz, and Bruce Kilby and Perry found an excuse for refusing to exhibit the Economy contract, although asked to do so, at the time of closing with Scholz.

The district court found that Roger Kilby knew or should have known of the representation of a $60,000 value, that he misrepresented the value to Scholz through his agent, Bruce Kilby, and that Scholz relied. There is some evidence tending to show that on August 5 Roger Kilby was aware of the misrepresentation. He did nothing to correct it. The findings are not clearly erroneous.

*Damages.*

The district court allowed damages, as follows:

(1) Unpaid portion of purchase price ($20,000 note) — $20,000.00

(2) Interest on (1), after crediting interest paid — 7,140.00

(3) Amount Scholz paid to Ryder to fulfill Scholz's guaranty of truck rental incurred by FABSCO — 32,000.00

(4) Interest on (3) — 1,322.83

(5) Net amount due for additional materials supplied by Scholz to FABSCO — 1,809.57

(6) Minimum royalties fixed by contract for first two years — 40,000.00

(7) Credit for royalties paid by FABSCO — (2,316.59)

$99,955.81

Apparently the district court allowed as damages the additional amounts it concluded Scholz would have received if the $50,000 subscription had been paid in and a credit of $60,000 had been assigned. The court concluded, reasonably, that if those things had been done, FABSCO would probably have survived and paid its obligations for at least two years. The court declined to allow the minimum agreed royalties for the full five years provided in the contract and sought by Scholz. In effect the court determined damages by taking the defendants at their word, as the court saw it, and giving Scholz the benefit of its bargain.

■ We think that under the circumstances, however, damages must be determined on the reasoning that if Roger Kilby had disclosed the facts as they were, Scholz would not have dealt with FABSCO, and should be compensated only for what it lost by such dealing.

As already observed one of the statutory conditions to which the subscription agreement was subject was not fulfilled. As a result Larson and Roger

Kilby were released from their contractual obligation to buy stock, although they were free to do so after the permit was issued. Larson, though not guilty of fraud, did not pay in $25,000, and it is speculation whether Roger Kilby would have paid in $25,000 after the permit was issued even if he had intended to do so when he signed the agreement. Thus it can not be said with any degree of certainty that Scholz's failure to reap all the benefits of its contract was "detriment proximately caused" by the fraud.[6]

On the assumption that the deal would not have been made but for the fraud, Scholz should be compensated for the value of its assets, plus other expenditures made as a result of its transaction with FABSCO, less the amount it has received. Although Scholz would doubtless have attempted to procure a royalty agreement with some other concern for the use of its trade name, the proceeds it might have obtained are completely speculative. There is evidence that the Scholz operation in California had been unprofitable, and that Scholz considered itself very lucky in the terms it obtained from FABSCO. The record suggests that Bruce Kilby and Perry were sufficiently irresponsible so that the fact that they were willing to agree to the royalty terms is no evidence at all that responsible businessmen would have done so. Item (6), $40,000 minimum royalties, must be excluded from the computation.

Defendants have challenged the findings of damages on the ground that the evidence of unpaid obligations, and the like, produced by Scholz at the separate trial on damages, was incompetent. Burke, the vice president of Scholz who conducted the negotiations with FABSCO, was the only witness. He testified to the facts reflected in the findings and produced file copies of documents relating to some of these matters, corroborating his testimony. Defendants made no objections at trial. The record shows that Scholz had another witness present, but elected not to call him after Burke's testimony was completed.

It is true that the district judge had urged counsel to be sparing with objections and to "argue the effect of any of this in your briefs." He had held a pretrial conference and was proceeding somewhat informally in the interest of speedy determination.

A good deal of Burke's testimony, at least in the absence of further qualifying testimony, would have been inadmissible upon proper objection. Although he was the corporate officer who had been closely concerned with the particular transactions, it appears that he was relying to some extent on information received from other employees. The documents he produced were not shown to be the best evidence or properly authenticated as business records. It is our impression, however, that in urging that the parties be sparing of objections and argue the matter in their briefs, the judge was addressing himself to relevancy, theories of damage and the like, and did not intend to prevent defendants' insistence on competent proof of the truck lease, guaranty and the status of the various accounts, if they so desired. Considering the nature of the facts involved and Burke's familiarity with the transactions, it seems improbable that a new trial under strict rules of evidence would produce a different result. Defendant Roger Kilby has not persuaded us that injustice will result from holding him to his failure to object.

We think that under the testimony the contract price of $120,000 can be taken as the value of the assets transferred to FABSCO and that, in effect, the appropriate amount of damages is determined by subtracting $40,000 (item (6)) from the amount allowed by the district court.

In summary, we conclude that judgment against Roger Kilby on Count I was proper, except that the amount of damages should have been $59,955.81.

6. See sec. 3333, Civil Code of California.

**350**

Larson should not have been found liable under Count I. The district court did not consider whether Larson is liable under Count III, the parties have not argued that question here, and we have not considered it, except, of course, to the extent that the facts or legal propositions herein determined may incidentally bear upon it.

Insofar as the judgment awarded recovery from defendant Larson, it is reversed, and the cause is remanded for such proceedings as may be appropriate under Count III. Insofar as the judgment awarded recovery from defendant Roger Kilby, it is modified so as to award recovery, as of July 13, 1967, of the sum of $59,955.81 and costs, and, as so modified, that part of the judgment is affirmed. Scholz may recover its printing costs from defendant Roger Kilby. Defendants joined in their appendix and briefs, and no costs are allowed in favor of or against defendant Larson.