## AMERICAN ALKALI CO. v. KURTZ.

### (Circuit Court, E. D. Pennsylvania. January 20, 1905.)

### No. 49.

1. CORPORATIONS—STOCKHOLDERS—LIABILITY.

The real owner of corporate stock standing by his procurement in the name of a dummy, and never having been in his own name on the books of the company, is liable to be charged as a shareholder with either the statutory liability for debts or for unpaid assessments on the stock.

[Ed. Note.—Stockholders' liability to creditors in equity, see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.]

2. SAME—AGENTS—UNDISCLOSED PRINCIPAL—LIABILITY.

The rule that an agent of an undisclosed principal is equally liable with the principal has no application where there is no contract relation induced and entered into between the plaintiff and the agent.

3. SAME—BROKERS—LIABILITY—EVIDENCE.

A stock subscription contract provided that after payment of 20 per cent. of the par value of the stock the subscribers should no longer be liable for any balance on their subscriptions, except on such shares as stand of record on the books of the company in their names at the time any subsequent assessments were made, but that the holders of such shares of record at that time should only be liable therefor. The corporation's charter also provided that after payment of $10 per share on the preferred stock, the subscribers should not be liable for any balance of their subscription, except on the shares standing of record on the company's books in their names, etc., at the time subsequent assessments were made. *Held*, that where, after the issuance of certain shares of preferred stock on which the initial payment of 10 per cent. had been made, the shares were transferred by defendant, a broker, who purchased the stock for others, to one M., who was the corporation's transfer clerk, as a mere dummy, and defendant was not requested to inform the corporation as to the identity of the real owners of the stock, he was not liable for subsequent assessments levied thereon.

Judgment on a Case Stated.

Burr, Brown & Lloyd, for plaintiff.
Rudolph M. Schick, for defendant.

HOLLAND, District Judge. This is a suit by Arthur K. Brown, surviving receiver of the American Alkali Company, against the defendant, for an assessment of $2.50 a share on 3,700 shares of preferred stock of the American Alkali Company standing in the name of H. C. Magee on the books of the company now and at the time the assessment was made. The facts in the case are agreed upon in a case stated, which are as follows:

The American Alkali Company is a corporation organized under the laws of the state of New Jersey April 20, 1899, with a capital stock of $30,000,000, of which $6,000,000 is preferred, of a par value of $50 per share. This preferred stock was all subscribed for and issued to subscribers who paid the first 20 per cent. installment, which was then issued and sold to the public subject to assessments of 10 per cent. each for the balance due upon 30 days' notice. On September 12, 1901, a call of $10 per share on the holders of the preferred stock of the plaintiff company of record on September 16, 1901, was made according to law, the first installment of $2.50 per share of which was made payable November 11, 1901. Subsequently, on September 9, 1902, Henry I. Budd, Jr., and Arthur K. Brown were appointed receivers of said company, and duly qualified. The receivers, on November 14, 1902, were authorized by the District Court of New Jersey to proceed against the preferred stockholders to collect the first installment, in consequence of which this suit was brought by the surviving receiver against the defendant.

One of the terms of the subscription agreement was as follows:

"Upon payment of the first installment of 20% the full paid certificates of common stock and partially paid certificates of preferred stock, setting forth that 20% has been paid thereon, shall be delivered to the subscribers hereto and as subsequent installments are paid they shall be endorsed on the latter.

"Provided, however, that after the payment of the 20% provided for above amounting to a total of $10 per share, the subscribers hereto shall no longer be liable for any balance on their subscription excepting upon such shares as shall stand of record on the books of the Company in their names, at the time any subsequent assessments or calls are made, but the holders of such shares of record on the books of the Company at that time, and they only shall be liable for the same."

The charter or certificate of incorporation contained the following clause:

"After payment of $10 per share on the preferred stock, the subscribers thereto shall not be liable for any balance of their subscription excepting upon such shares as shall stand of record on the books of the Company in their names at the time when any subsequent assessments or calls are made, but the holders of such shares of record on the books of the Company at that time and they only shall be liable for the same."

The defendant is a banker and broker, doing business in the city of Philadelphia, and on November 17, 1900, was in possession of 37 certificates, representing 100 shares each, of the preferred stock of the plaintiff corporation, registered on the books of the company in the names of various persons other than the defendant, each certificate accompanied with a power of attorney to transfer the same, duly executed by these various persons in whose names they were registered, but in blank as to the name of the attorney who was to execute the transfer. The stock, or any part of it, represented by these certificates, was not the property of the defendant, but all belonged to various other persons, and the defendant was in possession of the certificates as agent for various persons who were the owners thereof. On this date the defendant, acting therein as an agent for and on behalf of the various persons who owned the stock, delivered to the officers of the defendant company the certificates

for 3,700 shares, together with the power of attorney to transfer the same, and requested that they be transferred, and new certificates therefor be issued to H. C. Magee, which was accordingly done, and the said shares stood of record on the books of the company in his name, and so continued from the 17th day of November, 1900, to the 16th day of September, 1901. At the time the shares were transferred by the defendant he did not inform the American Alkali Company of the names of the various persons to whom the stock belonged, or for whom the defendant acted on requesting the transfer thereof to H. C. Magee, and he (the said defendant) was not asked to so inform the company. Magee, in becoming the holder of record of the said shares of stock, acted at·the request of the defendant, and had no ownership, interest, or property in the shares, and at this time was the clerk of the said American Alkali Company for the transfer of stock. Demand was made to pay this assessment, and payment was refused by defendant.

Upon these facts, if the court be of the opinion that the defendant is liable to pay the said assessment, then judgment be entered for the plaintiff for the sum of $9,250, with interest from December 11, 1901; but, if not, then judgment be entered for defendant. The costs to follow the judgment, and either party reserves the right to sue out a writ of error or appeal therein.

Upon this statement of facts the question is whether or not the agent of an undisclosed principal, who places stock certificates in the name of a dummy, is liable for assessments thereon. Magee was selected as the record owner by the defendant for an undisclosed principal. The defendant has never been requested by the plaintiffs to disclose the real owner, and it does not appear that he has ever refused. There is no doubt about the fact that in law both Magee and the real owner are liable for the assessments sought to be recovered against the defendant in this suit. The cases are uniform in holding that the real owner of stock, standing by his procurement in the name of a dummy, and never having been in his own name on the books of the company, is liable to be charged as a shareholder with either the statutory liability for debts or for unpaid assessments upon the capital stock. Pauley v. State Loan & Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844; Dunn v. Howe, 107 Fed. 849, 47 C. C. A. 13; Houghton v. Hubbell, 91 Fed. 453, 33 C. C. A. 574; Davis v. Stevens, 7 Fed. Cas. 177; Case v. Small (C. C.) 10 Fed. 722. There are decisions too numerous to mention in the state courts to the same effect, but my attention has not been directed to a case, and I have not been able to find a case, which decides that, where stock is placed in the name of either an agent, trustee, or dummy, by an agent of an undisclosed principal who is the real owner, there is any liability for unpaid assessments on the stock on the part of the agent of the undisclosed owner in so registering the stock.

It is contended by the plaintiffs that the defendant is estopped from denying liability because he acted as agent in procuring the issuance of the stock in the name of Magee, upon the principle that the agent of an undisclosed principal is equally liable with the prin-

cipal. This is a salutary principle of law enforced against an agent acting for an undisclosed principal in cases where his action is such as to induce the other party to extend a credit on his account; or where one enters into a contract with the agent without knowing him to be such, upon discovery of the principal he may elect between them which to sue; and in contracts the rule is the same where he states himself to be an agent without disclosing the name of his principal. But this principle has no application where there is no contract relation induced and entered into between the plaintiff and defendant, as in this case. Kurtz appeared as agent for the actual owner of the stock, and, without misleading the plaintiffs or practicing any deception or fraud upon them, selected their own transfer clerk, in whose name he placed the certificates, with the permission of the corporate officers of the plaintiff company, with full knowledge on their part of the provision in their charter, and issued the certificates accordingly, knowing at the time that the defendant was not the owner of the stock.

While the case of Bean et al. v. Alkali Company (recently decided by the Circuit Court of Appeals in this district) 134 Fed. 57, is not directly in point, the reasoning in the case is decisive of the question here involved. Bean signed the subscription agreement for 9,700 shares of this preferred stock, and at the bottom of the subscription he made a memorandum as follows: "Make ctfs. 100 shs. each name of Geo. W. Mactague, 521 Morris St.," which was accordingly done. Mactague was the dummy and record owner of this stock when suit was brought against Bean & Co. for the first installment of the assessment—the same assessment involved in the case at bar—and it was alleged in the statement that "the shares were placed in the name of Mactague for the convenience and accommodation of the defendants for the purpose of concealing the real ownership thereof, escaping liability for possible assessments, or for other reasons unknown to the plaintiffs; and that Mactague acted in the premises at the request of and on behalf of the said defendants, but without any interest whatever in the said shares." Bean & Co. disputed their liability and denied ownership of the stock standing in the name of Mactague, and offered to prove that they were brokers acting for their clients, who were real owners, to whom they had transferred the certificates, and that they had no interest in the stock whatever. The court below struck out this evidence, and directed a verdict for the plaintiff, which was held to be error. The Circuit Court held that the agent was entitled to show that he was not the real owner of the stock that stood in the name of the dummy, Mactague (a fact which is admitted in the case at bar), the logical result of which is that, if the jury believed that evidence, and found the fact offered to be proven, to wit, that the agent was not the owner of the stock, then the verdict should have been in his favor. In view of the provision above set forth in the charter of the plaintiff company, and the fact that they knew Kurtz was not the owner of this stock at the time he placed it in the name of Magee, and that he was acting only for his clients, who were customers of his, and they so registered the stock without any ob-

jection or inquiry whatever from him at the time, they cannot now be permitted to hold him responsible for these assessments. Bean v. Alkali Co., supra.

The court being of opinion that the defendant is not liable, judgment is entered in his favor. Costs to follow the judgment, and either party to have the right to sue out a writ of error and appeal herein.