[L. A. No. 6336. In Bank.—January 27, 1922.]

WILLIAM H. MOORE, Jr., Trustee, etc., Appellant, v. H. W. MOFFATT et al., Defendants; J. M. NEELAND et al., Respondents.

[1] CORPORATIONS—INSOLVENCY—TRANSFER OF STOCK—LIABILITY OF STOCKHOLDER.—A transfer of stock in an insolvent corporation to a financially irresponsible person, made with the intent to escape liability as a stockholder, will not suffice to enable the transferor to escape such liability.

[2] ID.—RECOVERY OF UNPAID SUBSCRIPTIONS—ISSUANCE OF CERTIFICATES TO INSOLVENT PERSON—PLEADING—INTENT TO AVOID LIABILITY.—In an action by the trustee of a bankrupt corporation to recover unpaid subscriptions for shares of stock for which certificates had never been issued to the subscribers but had been issued by their direction to an insolvent person, the complaint was vitally defective in not alleging that the defendants' direction was made with the intent and purpose of evading their stockholder's liability.

[3] ID.—VALIDITY OF SUBSCRIPTION AGREEMENT—PERMIT FROM CORPORATION COMMISSIONER — ERRONEOUS NONSUIT.—In such an action, the granting of a motion for a nonsuit on the ground of the alleged invalidity of the subscription agreement because of its execution prior to the procurement of a permit from the corporation commissioner authorizing a sale of the stock was improper where no stock was in fact issued until after a valid and regular permit had been obtained.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

188 Cal.—1        (1)

Kimball Fletcher and Edgar K. Brown for Appellant.

Oliver O. Clark, Claude B. Andrews and Carnahan & Clark for Respondents.

LENNON, J.—This is an appeal from a judgment of nonsuit in favor of the defendants, Neeland and Beggs, in an action brought by the plaintiff, as the trustee of a bankrupt corporation, to recover, under the trust fund theory, the difference between the sums paid on a subscription agreement for stock in the corporation and the par value of said stock, irrespective of the terms of the agreement. (See *Vermont Marble Co.* v. *Declez Granite Co.,* 135 Cal. 579 [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057]; *Herron Co.* v. *Shaw,* 165 Cal. 668 [Ann. Cas. 1915A, 1265, 133 Pac. 488]; *Harrison* v. *Armour,* 169 Cal. 787 [147 Pac. 1166]; *Sherman* v. *Harley,* 178 Cal. 584 [7 A. L. R. 950, 174 Pac. 901]; *Hasson* v. *Koeberle,* 180 Cal. 359 [181 Pac. 387].)

The pleaded facts of the plaintiff's case pertinent to the points presented on the motion for a nonsuit are these: On January 8, 1915, the defendants entered into an agreement in writing with the Admiral Automatic Water Heater Company, a corporation, and certain individuals interested therein, for the formation of a new corporation to be known as the Admiral Manufacturing Company. The agreement provided in part "that said Neeland and Beggs agree to subscribe and purchase from the said Admiral Manufacturing Company 96 shares of its capital stock at the sum of $25.00 per share, to be paid as follows: $400.00 on the first day of January, 1915, and a like sum on the 1st day of each and every month thereafter to and including the 1st day of June, 1915, and upon the payment of each $400.00 when the same becomes due there shall be issued to said Beggs and Neeland 16 shares of the capital stock of the Admiral Manufacturing Company." Thereafter, so the complaint alleged, in accord with the terms of said subscription agreement, the defendants paid for said stock the sum agreed to be paid therefor.

The Admiral Manufacturing Company was organized with an authorized capital stock of one hundred thousand dollars, divided into one thousand shares of the par value of one

hundred dollars each. It does not appear from the complaint when this company was organized. At all times from the organization of said corporation it was insolvent, and its insolvency was known to the defendants. No certificate of stock was ever issued to said Neeland and Beggs, or either of them, but on December 1, 1915, they directed that a certificate for ninety-six shares be issued to A. E. Warmington, and, pursuant to such direction, such certificate was issued on December 11, 1915. On said last-mentioned dates, and at all intervening times, said Warmington was insolvent, and known to be so by the defendants. No demand has ever been made by the board of directors of said corporation for the unpaid balance of the purchase price of said stock and no assessment levied.

On April 6, 1916, said Admiral Manufacturing Company filed a voluntary petition in bankruptcy and plaintiff was appointed trustee. Claims against the bankrupt estate were allowed aggregating $13,402.12, while the available assets amounted to but $349.17. On June 28, 1917, the referee in bankruptcy directed the plaintiff, as trustee, to call in all unpaid subscriptions, and, upon failure of the stockholders to make payment to sue therefor. Each of the defendants refused to make payment, and plaintiff thereupon brought this action.

The defendants, after denying generally their ownership of the stock in question, by their answers admitted that they signed said subscription agreement, alleging, however, in that behalf, matters and things which, if true, and had they been established in evidence as part of the defendants' case, might have tended to show that said A. E. Warmington, and not the defendants, was the real subscriber for the stock, and was to be the actual owner thereof, when it was issued. With the latter phase of the case, however, we are not concerned upon this consideration of the merits of the motion for nonsuit.

The defendants did not deny the allegation of the complaint that they had paid to the corporation the sums agreed to be paid for the said stock in keeping with the terms of the subscription agreement. This being so, it may be taken as an admitted fact that the defendants paid to the corporation the price agreed upon for the purchase of the stock. No denial was made of the allegation of the plaintiff's com-

plaint that pursuant to defendants' direction on December 1, 1915, the stock subscribed for was issued on December 11, 1915, to said Warmington, and that likewise may be taken as an admitted fact in the case. It was also an expressly admitted fact in the case that no permit authorizing the sale of the corporation's stock was issued by the commissioner of corporations until September 10, 1915, and that this permit was superseded by an amended permit issued and dated October 24th of the same year. The amended permit provided, among other things, that the applicant was permitted ''to sell 600 shares of its preferred stock at $30 per share,'' upon the condition, among others, ''that the total compensation, commission or expense to be paid or incurred by said applicant in the sale of any of said shares of preferred stock shall not exceed 20 per cent of the selling price thereof.''

The bill of exceptions shows, as a part of the plaintiff's case, that it was stipulated by and between the parties that the subscription agreement in question was made prior to the organization of the corporation, and ''that the plaintiff had offered evidence tending to prove all the allegations of the complaint except that in regard to the allegations that the defendants Neeland and Beggs were stockholders or subscribed to the stock, the only evidence offered was that already in the record and the admissions of the pleadings.'' Upon the record thus made plaintiff then rested his case, whereupon the defendants moved for a nonsuit ''upon the ground [that] the subscription agreement purported to have been made was made at a time anterior to the issuance of any permit by the Corporation Commissioner in violation of the Investment Company's Act as it was in force in January, 1915; and further that it appears from the terms of the subscription agreement itself that the stock was sold for less than the sum authorized by the Corporation Commissioner to sell it.''

At this point it may not be amiss to note that the stipulation of the parties applied as a matter of course to, and sufficiently supports, as against a motion for a nonsuit, the allegation of the complaint that the corporation and Warmington, the nominee of defendants to whom the stock was issued, were at all times insolvent and known to the defendants to be so. [1] This allegation was evidently intended

to charge and hold the defendants as stockholders, despite the fact that the stock was issued to another person, upon the recognized and approved theory that the transfer of stock in an insolvent corporation to a financially irresponsible person, made with the intent to escape liability as a stockholder, will not suffice to enable the transferor to escape such liability. (14 C. J. 1032; *Pauly* v. *State Loan etc. Co.*, 165 U. S. 606 [41 L. Ed. 844, 17 Sup. Ct. Rep. 465, see, also Rose's U. S. Notes]; *American Alkali Co.* v. *Kurtz*, 134 Fed. 663.) **[2]** But the allegation of the plaintiff's complaint in this behalf is grievously, if not vitally, deficient in not alleging that the defendants' direction to issue the stock of the insolvent corporation, for which they had subscribed, to an insolvent person, was done with the intent and purpose of evading their stockholder's liability. However, no point is made of this upon the record now before us. It was a defect in the plaintiff's case which might have been remedied had attention been called to it by the motion for nonsuit, and, inasmuch as it was not made a ground for the motion for a nonsuit, it could not, upon that motion, be considered by the trial court, nor can it, for the same reason, be considered by this court in determining the merits of the motion. (*Schroeder* v. *Mauzy*, 16 Cal. App. 443, 450 [118 Pac. 459]; *Sebring* v. *Harris*, 20 Cal. App. 56 [128 Pac. 7]; *Williamson* v. *Williamson*, 41 Cal. App. 721 [183 Pac. 301]; *Potts* v. *Mehrmann*, 50 Cal. App. 622 [195 Pac. 941]; *Raimond* v. *Eldridge*, 43 Cal. 506; *Gardiner* v. *Schmaelzle*, 47 Cal. 588; *Coffey* v. *Greenfield*, 62 Cal. 602; *Miller* v. *Luco*, 80 Cal. 257 [22 Pac. 195]; *Daley* v. *Russ*, 86 Cal. 114, 117 [24 Pac. 867]; *Palmer & Rey* v. *Marysville*, 90 Cal. 168 [27 Pac. 21]; *Warner* v. *Warner*, 144 Cal. 615, 619 [78 Pac. 24]; *Durfee* v. *Seale*, 139 Cal. 604 [73 Pac. 435]; *Mattson* v. *Mattson*, 181 Cal. 44 [183 Pac. 443].)

**[3]** Conceding, for the purposes of discussion and decision, as is contended in support of the judgment, that the subscription agreement was in its inception void and incapable of acceptance by the corporation because executed, in contravention of the provisions of the Investment Company's Act (Stats. 1913, p. 715), prior to the procurement of a permit from the corporation commissioner authorizing a sale of the corporation's stock, and therefore could not

have been legally made the basis of an action against the defendants upon the theory that they were stockholders in the corporation, still we have the admitted fact in the plaintiff's case that no stock of the corporation was in fact issued in response to any agreement of the parties until after an admittedly regular and valid permit had been granted by the corporation commissioner. This being so, the subscription agreement, even though it may have been void and incapable of acceptance in the first instance, should, in the light of the subsequent conduct of the parties to the transaction, be considered and construed as a continuing offer to subscribe for the stock in question, pending the procurement of a permit from the corporation commissioner, which ultimately became the embodiment and expression of a new agreement to purchase the stock entered into at a time when the only legal obstacle in the way of a valid agreement had been overcome. The agreement, so considered, and having been in fact ultimately accepted by the corporation after the required permit had been procured—as evidenced by the issue of the stock upon the order of the defendants—the validity of its making and acceptance must be measured and tested by its character as revealed by the circumstances and conduct of the parties with relation thereto at the time of its ultimate acceptance rather than by the circumstances attending its mere physical making in the first instance. That is to say, the conduct of the parties to the transaction, the defendants on the one hand and the corporation on the other, with reference to the subject matter of the agreement, at a time when the only legal obstacle to the making of a valid subscription agreement had been overcome by compliance with the statutory requirement, was tantamount to an adoption by them of the terms and conditions of the subscription agreement as of the date of its ultimate acceptance, thereby in effect making it finally effectual as the expression of a new agreement, even though in its original making it may have been void and ineffectual for any purpose.

Of course, the parties to the transaction could not, nor did they, as a matter of law, by their adoption of the agreement ratify and thereby validate as of the time of its original making or any time thereafter an agreement which may have been void in the first instance. But the parties could, and we think they did, when the bar of the statute to the

making and acceptance of a valid agreement had been removed, elect to adopt and accept and stand upon the subscription agreement already signed as embodying—even though it may have been ineffectual at the time it was signed —the terms and conditions of a new agreement by which their future dealings were to be governed. (*Montgomery etc. Co.* v. *Montgomery etc. Co.,* 229 Fed. 672 [144 C. C. A. 82]; *Turner Const. Co.* v. *Union Term. Co.,* 229 Fed. 702 [144 C. C. A. 112]; *Miles* v. *Janvrin,* 200 Mass. 514 [86 N. E. 785]; Williston on Contracts, sec. 1772, p. 3082.)

So considering the subscription agreement in question, it must be held that it did not fall within the claimed inhibition of the statute, and, therefore, the motion for a nonsuit was improperly granted upon the ground of the alleged invalidity of the agreement.

It seems to be conceded by the respondents, as we think it must be, that the proviso in the permit of the corporation commissioner "that the total compensation, commission or expense to be paid or incurred by said applicant in the sale of any of said shares of preferred stock shall not exceed 20 per cent of the selling price thereof" should be construed as meaning that it "permitted the corporation to pay compensation, commission or expense" of the sale of the stock "out of" and "up to 20 per cent . . . of the price of $30 per share," at which the corporation was authorized to sell the stock. This being so, it must be held that the sale of the stock was made to the defendants in substantial accord with the provisions of the permit. Obviously, the purpose of the law and the object of the permit were fulfilled when the corporation received a net price in excess of the minimum named in the permit. The subscription agreement provided for the payment of twenty-five dollars a share, and the stock admittedly was sold at that price, which is one dollar per share more than the minimum net price fixed by the corporation commissioner for the sale of the stock. This being so, the ground for the motion for nonsuit in this particular was nonsubstantial and will not suffice to support the judgment.

For the reasons stated the judgment is reversed.

Sloane, J., Wilbur, J., Waste, J., Lawlor, J., Shurtleff, J., and Shaw, C. J., concurred.