[L. A. No. 9192. In Bank.—September 26, 1929.]

IMPERIAL LIVESTOCK AND MORTGAGE COMPANY (a Corporation), Appellant, v. WILLIAM TRACY, Respondent.

Fredericks, Hanna & Morton and C. V. Anderson for Appellant.

Dorsey & Campbell and Emmons, Aldrich & Henry C. Mack for Respondent.

PRESTON, J.—We agree with the conclusion of the learned District Court of Appeal announced in this case and as to the questions raised by the appeal as to causes of action two, three, four and five, we adopt a portion of the opinion of Mr. Justice Plummer, as follows:

"This action was brought to enforce payment of five promissory notes set out in plaintiff's complaint in five separate causes of action. The defendant had judgment and the plaintiff appeals.

"The first cause of action is based upon a promissory note in the sum of $7,500, executed by the defendant on May 20, 1922. The second cause of action is on a promissory note in the sum of $1,875, executed by the defendant on May 20, 1922. The third cause of action is based upon a note executed by the defendant in a like sum of $1,875, dated May 20, 1922. The fourth cause of action is based upon a promissory note executed by the defendant in the sum of $7,500, dated May 20, 1921. And the fifth cause of action is based upon a promissory note executed by the

defendant in the sum of $3,750, on May 20, 1921. These notes were all executed for and on account of original subscription agreements of the defendant to purchase shares in the capital stock of the plaintiff corporation. These subscriptions are dated as follows: One for 250 shares of the capital stock of said company, dated February 5, 1920; one for 250 shares of the capital stock of said company, dated November 16, 1920; one for 500 shares of the capital stock of said company, dated January 27, 1921; one for 1000 shares of the capital stock of said company, dated March 16, 1921; and one for 1000 shares of the capital stock of said company, dated April 7, 1921. The note based upon the subscription agreement for 1000 shares of the capital stock of the plaintiff corporation, dated April 7, 1921, appears in the complaint in the form of a renewal note, for the same sum set forth in the first cause of action.

"By way of defense to the plaintiff's action, the defendant set forth in his answer that the notes were obtained by fraudulent representations, and, also, that the subscription agreements upon which the original notes were given were void under the Corporate Securities Act, and that the notes sued upon are simply renewals of the original void obligations.

"The subscription agreements were all in similar form, and, among other items, contained the following: 'I hereby subscribe for, and agree to purchase —— shares of the capital stock of the Imperial Live Stock & Mortgage Company, a corporation organized and existing under and by virtue of the laws of the State of California, and agree to pay therefor $10.00 per share, payable as follows: Not less than one-fourth cash accompanying this obligation, and the balance thereof as evidenced by a promissory note of even date herewith bearing interest at the rate of 6 per cent per annum.' The permit issued by the commissioner of corporations permitting the plaintiff corporation to take subscriptions for shares of its capital stock, specified that not less than 25 per cent of the par value of the stock should be paid for in cash, and that the remainder or 75 per cent of the amount agreed to be paid might be evidenced by a promissory note or promissory notes bearing 6 per cent interest.

"In so far as the agreements to purchase shares of the capital stock of the appellant corporation are concerned, upon which the renewal note set forth as the second, third, fourth and fifth causes of action in the plaintiff's complaint are based, the record shows beyond controversy that no part of the 25 per cent of the par value of the shares of the capital stock subscribed for by the defendant was paid in cash. In each instance, so far as the agreements to purchase shares of the capital stock which lead to the giving of the renewal notes set forth in said causes of action are concerned, what are called in the transcript 'myself notes' only were given; that is, the defendant, when subscribing for shares of the capital stock, instead of paying 25 per cent in cash, drew a note payable to himself for 25 per cent of the par value of the shares of stock subscribed for and delivered the same to the plaintiff, and then, at the same time, and as a part of the same transaction, executed a promissory note payable at a definite time some months after the date of the execution of the note, for 75 per cent of the par value of the stock subscribed for. The record shows that prior to the 20th day of May, 1921, these 'myself notes' had all been taken up by the defendant by the payment in cash of the 25 per cent of the value of the shares of stock theretofore subscribed for by the defendant. That on said 20th day of May, 1921, renewal notes were given in lieu of the former notes, representing 75 per cent of the purchase price of the shares of stock mentioned in the subscription agreements. That at said time, the shares of capital stock subscribed for were issued and assigned to certain persons as trustees for the benefit of the plaintiff, to be held as security or until the 75 per cent notes were fully paid, trust certificates representing the shares of stock called for in each subscription being delivered to the defendant, evidencing the number of shares assigned by him, and to be held in trust for the benefit of the corporation.

"The court instructed the jury to find in favor of the defendant as to the second, third, fourth and fifth causes of action alleged in plaintiff's complaint. With this summary we may proceed to consider the appellant's contentions, which are as follows;

"1. That the court erred in directing the jury to return a verdict in favor of the defendant on the second, third, fourth and fifth causes of action;

"2. That the issue of fraud should not have been submitted as a defense to the first cause of action set forth in the plaintiff's complaint;

"3. That the defense of illegality, based on the use of 'myself notes,' should not have been submitted as a defense to the first cause of action.

"As heretofore stated, all the notes sued on by the plaintiff in the second, third, fourth and fifth causes of action set forth, are renewal notes, based upon subscription agreements for the purchase of shares of stock, under a permit from the commissioner of corporations, providing that at least 25 per cent of the purchase price should be paid in cash, whereas in truth and in fact no cash was paid, and only 'myself notes' were given for the 25 per cent of the purchase price, which notes were subsequently taken up by the defendant.

"Section 12 of the Corporate Securities Act, usually referred to as the 'Blue Sky Law,' reads as follows: "Every security issued by any company without a permit of the Commissioner authorizing the same, then in effect, shall be void, and every security issued by any company, with the authorization of the Commissioner but not conforming in its provisions to the provisions, if any, which it is required by the permit of the Commissioner to contain, shall be void." (Deering's General Laws, 1923, part 1, p. 1414.)

"The receipts issued by the appellant corporation at the time of taking subscriptions to purchase shares in its capital stock were in the following form, one of which will suffice: 'November 16, 1920. Received of William Tracy, of Buttonwillow, California, the sum of $2500.00, cash, $625.00, note $1875.00, payable to Imperial Livestock & Mortgage Company as payment for 250 shares of the capital stock of the Imperial Livestock & Mortgage Company, as set forth in this subscription contract, numbered the same as the receipt and bearing even date herewith.

" 'IMPERIAL LIVESTOCK AND MORTGAGE COMPANY

" 'L. V. MORON, Special Agent.'

"No mention being made in the receipts that the 25 per cent of the subscribed cost of the shares of stock was

in fact evidenced by 'myself notes,' and not really paid in cash at the date of the subscription. Upon this state of facts the appellant contends, upon the authority of *Moore* v. *Moffatt,* 188 Cal. 1 [204 Pac. 220], that the renewal notes, though based upon void contracts, became valid obligations upon the date of renewal, the issuance of the certificates, and the assigning of them by the defendant to trustees for the benefit of the corporation, under the theory that the agreement was a continuing offer on the part of the corporation for the sale of its stock, and was accepted in a valid manner at the date of the issuance thereof, ratified by the defendant as evidenced by his having taken up and paid the 'myself notes,' and the then giving by him of notes evidencing the remaining 75 per cent of the value of the respective purchases. In the case of *Moore* v. *Moffatt, supra,* the action was brought by a trustee in bankruptcy to recover the difference between the sums paid on a subscription agreement for stock in a corporation, and the par value of the stock. In that case it appears that the amount agreed to be paid had all been paid. The defense to the action was based upon the fact that at the time the money was paid, the corporation had no valid permit to sell shares of its capital stock. The court, in discussing the issues involved in that case, used the following language: 'Conceding, for the purposes of discussion and decision, as is contended in support of the judgment, that the subscription agreement was, in its inception, void, and incapable of acceptance by the corporation because executed, in contravention of the provisions of the Investment Companies Act (Stats. 1913, p. 715), prior to the procurement of a permit from the corporation commissioner authorizing a sale of the corporation's stock, and therefore could not have been legally made the basis of an action against the defendants upon the theory that they were stockholders in the corporation, still we have the admitted fact in the plaintiff's case that no stock of the corporation was in fact issued in response to any agreement of the parties until after an admittedly regular and valid permit had been granted by the corporation commissioner. This being so, the subscription agreement, even though it may have been void and incapable of acceptance in the first instance, should, in the light of the subsequent conduct of the parties to the trans-

action, be considered and construed as a continuing offer to subscribe for the stock in question, pending the procurement of a permit from the corporation commissioner, which ultimately became the embodiment and expression of a new agreement to purchase the stock entered into at a time when the only legal obstacle in the way of a valid agreement had been overcome. The agreement, so considered, and having been in fact ultimately accepted by the corporation after the required permit had been procured, . . . the validity of its making and acceptance must be measured and tested by its character as revealed by the circumstances and conduct of the parties with relation thereto at the time of its ultimate acceptance rather than by the circumstances attending its mere physical making in the first instance.' The court in that case then goes on to hold that the acts of the parties were tantamount to an adoption by them of the terms and conditions of the subscription agreement as of the date of its ultimate acceptance, and that the defendants were liable for the unpaid portion of the capital stock, and reversed the judgment of nonsuit entered by the trial court.

"If the circumstances of the instant case were identical with the case of *Moore* v. *Moffatt, supra,* the contentions of the appellant would have to be accepted as decisive, and the ruling of the trial court reversed. As we regard the transaction, however, a different principle is involved. In the Moffatt case the trustee was not suing upon a tainted contract affecting its validity. In the case at bar there can be no doubt that the original 75 per cent notes, of which the notes represented in causes of action set forth in plaintiff's complaint numbered two, three, four and five are renewals, were invalid.

"In the case of *Domenigoni* v. *Imperial Livestock & Mortgage Co.,* 189 Cal. 467 [209 Pac. 36], in an action to cancel certain promissory notes given to represent 75 per cent of the purchase price of shares of the capital stock of the corporation which is the appellant in the present action, where 'myself notes' were given for 25 per cent instead of cash, just as in the case at bar, the court held as follows: 'The entire transaction was an attempt to circumvent the law. The notes and agreements were each of them made in violation thereof, and are therefore against the policy of

the law and void.' No relief, however, was given for the following reason, as was there said, speaking of the plaintiff: 'He was a party to them and is equally guilty with the defendant. In such a case the court will give no relief even if the point is not raised by either party.' The contract being void, the promissory notes were held void and each party was left in the condition in which the court found him. The receipt given by the defendant, the appellant here, in the Domenigoni case was idential in language with the receipts given to the defendant in the instant case.

"In the case of *Union Collection Co.* v. *Buckman,* 150 Cal. 159 [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708], a case having to do with a renewal note given in place of a prior note based upon an illegal contract, it was held as follows (we quote from the syllabus): 'Any renewal notes given in place of the original notes, based upon an illegal consideration are affected with the same illegality. Merely repeating a promise based on an illegal consideration cannot give it validity.' It is further said in the opinion in that case, quoting from a former opinion of *Kreamer* v. *Earl,* 91 Cal. 112 [27 Pac. 736]: ' "It is not for the sake of the party who is benefited by the intervention, but for the sake of the law itself," that a court refuses to allow the law and the machinery of the courts to be made use of for the enforcement of illegal contracts, and leaves the parties precisely where it finds them.' Quoting, also, from the case of *Hill* v. *Kidd,* 43 Cal. 615, 'It is equally well settled that no action in affirmance of an illegal contract can be maintained.'

"A long list of citations supporting the rules of law just set forth may be found in 11 American and English Annotated Cases, page 612, following the opinion in the Buckman case. ▮ The authorities there set forth are so numerous as to prevent repetition here, but all hold that a renewal note given in lieu of a previous note based upon an illegal contract partakes of the same tainted character, and is unenforceable when in the hands of the parties participating in the fraud or in the acts which render the original note invalid.

"In 19 California Jurisprudence, 1006, we find the following statement supported by authorities: 'A renewal note given in place of the original one based upon an illegal

consideration, is affected with the same illegality; merely repeating a promise based on an illegal consideration cannot give it validity.' It is but trite to say that 'commercial paper cannot be based on any consideration which is in violation of an express statutory provision.' (8 Cal. Jur. 243.) Again, 'If the instrument or contract is declared void by statute, it cannot be enforced; in some states, even by a *bona fide* holder.' (8 Cal. Jur. 768.) The latter statement is not involved here, the original parties only being before the court.

"In the case of *Reno* v. *American Ice Machine Co.*, 72 Cal. App. 409 [237 Pac. 784], in an action based upon a void contract for the purchase of stock, an attempt is made to distinguish between actions where the original parties are involved, and actions where a representative of one of the parties appears, as was the case in *Moore* v. *Moffatt, supra*, where a trustee in bankruptcy was one of the parties, and in so doing, referred to the case of *Moore* v. *Moffatt* in the following language: 'That was not an action between the parties to void a contract, but an action by a trustee in bankruptcy of a corporation to recover the unpaid subscription price of stock for the benefit of creditors. That situation presents an exception to the rule above announced, which rule is suspended in the interests of innocent third persons who have relied upon the contract.' Although this statement is relied upon by respondent and vigorously assailed by the appellant, we do not feel called upon to either approve or disapprove the language there used, save and except to state that in the Moffatt case the circumstances are readily distinguishable from the circumstances characterizing the transaction in the cause now before us. The contract, which really was a contract created by law to pay the unpaid portion of capital stock issued to, and accepted by the defendants in the case of *Moore* v. *Moffatt,* only, was involved, whereas in the instant case the attempt is made to give vitality and validity to tainted and void contracts by renewals thereof.

■ "The issues presented in this cause relate to matters of public policy. If no other persons were involved, and the principle reached no farther than the respective parties to this cause, we might consider seriously the contention of the appellant that the renewal notes, instead of being con-

sidered on the same basis, should be treated as a new subscription for the shares of stock in the plaintiff corporation, and valid and enforceable obligations. To do so, however, would be to open the door to all the illegal practices condemned by the Corporate Securities Act. If a scheme or a plan to avoid the provisions of that act and of the requirements inserted in the permit issued to the corporation by the corporation commissioner, relating to its sale of stock, can be accomplished by the subterfuge of the issuance and taking of 'myself notes' for 25 per cent of the value of the stock and ordinary notes for 75 per cent, then, and in that case, the requirement for the payment of a certain portion of the subscription in cash, in order that the corporation may have assets to meet its obligations, would simply be to render nugatory not only the requirements of the corporation commissioner, but also the act itself. Public policy, which led to the enactment of the Corporate Securities Act, forbids the approval of any such transactions, and we think the trial court properly excluded from the jury consideration of the second, third, fourth and fifth causes of action tendered by the plaintiff's complaint, by instructing the jury to find for the defendant.''

Respecting the first cause of action, the court submitted to the jury two defenses: The illegality of the subscription for shares in part payment of which the note in question was given and the claim that the subscription was induced by the false representations of plaintiff's agent. In this connection we agree also with the learned District Court of Appeal in holding that the evidence shows without substantial conflict that the 25 per cent payment required by the permit issued by the corporation department was in fact paid in cash by the defendant on the day the subscription was made; hence the submission of this issue to the jury was unwarranted. (*Boone* v. *Oakland Transit Co.*, 139 Cal. 490 [73 Pac. 243]; *Idemoto* v. *Scheidecker*, 193 Cal. 653 [226 Pac. 922].) Error of this character is often prejudicial. (*Eppinger* v. *Kendrick*, 114 Cal. 620 [46 Pac. 613]; *Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390 [63 Pac. 682]; *Wallis* v. *Southern Pac. Co.*, 184 Cal. 663 [15 A. L. R. 117, 195 Pac. 408]; *Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 Pac. 913].)

But we need not determine the question of prejudice, for if it is conceded that the permit was not violated then the judgment must be reversed for another reason. The issue of illegality of the stock certificate being out of the case, the evidence was clearly insufficient to support a verdict for the defendant, as will appear from the following observation:

The court properly held upon the issue made by the cross-complaint and answer thereto that defendant was not entitled to a rescission of the contract, the basis of the note in question, upon the notice of rescission made December 29, 1924. Not being entitled to a rescission and not having sued for further affirmative relief by way of damages, defendant had left but the single remedy of recoupment by way of an offset *in toto* or *pro tanto* against the promissory note sued upon. While it is true that the answer pleaded that no consideration passed for execution of the note, yet defendant offered no proof to show that the stock was valueless. On the contrary, the clear inference from the evidence is that it is of considerable value. Under well-settled rules of law, defendant could not keep the stock and resist payment of the note *in toto* without offering evidence to show that the stock was entirely without value. (*Toby* v. *Oregon Pac. R. R. Co.*, 98 Cal. 490, 499 [33 Pac. 550]; *Field* v. *Austin*, 131 Cal. 379, 382 [63 Pac. 692]; *Paolini* v. *Sulprizio*, 201 Cal. 683, 686 [258 Pac. 380].)

This conclusion renders unnecessary a consideration of the contention of appellant that a fraud was not shown or, if shown, that the evidence shows same was waived.

In so far as the judgment appealed from relates to the first cause of action, it is hereby reversed. Otherwise, as to all other matters, the judgment is affirmed, neither party to recover costs.

Richards, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.