[Civ. No. 8206. First Appellate District, Division One.—October 8, 1932.]

D. C. HERKNER, Appellant, v. ALEXANDER RUBIN, Respondent.

Livingston & Livingston for Appellant.

Leo H. Shapiro, Harry K. Wolff and Norman Sanford Wolff for Respondent.

THE COURT.—This is an action to recover the sum of $3,000 upon an agreement for the purchase of certain preferred capital stock of Lubin Inc., a corporation.

The corporation became insolvent, and certain of its creditors procured judgment against it, upon which executions issued. These were returned wholly unsatisfied, and the claims were subsequently assigned to plaintiff, who is also a judgment creditor.

The subscription agreement reads as follows:

"March 24, 1926.

"I agree to take $3,000 worth of pref. stock paying 6 per cent dividend in the J. Lubin Stores Inc., as explained by J. Lubin. It is understood that I pay for the above in trade.

"BETTER HAT CO.,

"ALEXANDER RUBIN."

According to the findings Lubin Inc. was incorporated under the laws of California on August 16, 1926, and the above agreement was executed on the day it bears date. On August 18, 1926, the corporation for the first time applied to the commissioner of corporations for permission to issue to the defendant for cash the stock called for in the agreement. A permit to do so in accordance with the application was issued on September 7, 1926, upon the condition that the stock was escrowed in conformity with the terms of the permit. It was also found that the corporation at no time pursuant to the terms of the permit issued said stock to defendant. The articles of incorporation filed did not contain defendant's name as a subscriber for the stock. The permit issued authorized the corporation to sell its stock upon certain terms and conditions, those material here being as follows: "To sell and issue to the 22 persons named in its application an aggregate of not to exceed 1,000 shares of its class A preferred capital stock at par *for cash lawful money of the United States* for the uses and purposes re-

cited in its application and so as to net applicant the full amount of the selling price thereof.'' The court further found that the corporation failed to comply with the permit in that it did not sell and issue to defendant any shares for cash lawful money, or have approved by the commissioner a depositary to hold the stock authorized to be issued, and that no part thereof was escrowed as provided in the permit.

Defendant after the incorporation of the company and pursuant to the agreement mentioned delivered to it merchandise of the value of $1595.45. Since November 12, 1926, the company has been insolvent, and on April 19, 1927, the permit was suspended by the commissioner of corporations.

From the facts found the court concluded that the stock subscription agreement was not enforceable. Accordingly a judgment in favor of defendant was entered, from which plaintiff has appealed.

By the Corporate Securities Act a company, except as authorized by certain specific statutory provisions not applicable here, was forbidden to sell, offer for sale, negotiate for the sale of or take subscriptions for any security of its own issue, without procuring a permit from the commissioner of corporations permitting it to do so. A security was defined therein as including ''all shares or other interests or rights into which the capital, capital stock or property of companies, or rights of stockholders or members thereof, are divided . . . '' (sec. 2, subd. 7, Stats. 1925, p. 962); and by section 12 of the act any security issued by a company without such permission was declared to be void (Stats. 1917, p. 673). An amendment to the act adopted in 1925 (Stats. 1925, p. 962) provided that ''neither this act nor any provision hereof shall be deemed to prohibit subscriptions for shares of a domestic corporation made prior to the incorporation thereof and *set forth in the articles of incorporation,* but such subscriptions shall be deemed to have been made and accepted upon the condition that such corporation shall be incorporated within 90 days thereafter, and when incorporated shall with reasonable diligence apply for and secure from the Commissioner a permit authorizing the issuance of shares so subscribed for in accordance with such subscription . . . ''

Here the findings show a lapse of 143 days from the date of the subscription agreement to that of incorpora-

tion, and also that the articles of incorporation failed to recite the facts of defendant's subscription.

It has been held that under such circumstances the statute becomes a part of the subscription agreement, and unless the conditions are complied with a subscription agreement is not enforceable (*First Nat. Bank of Calexico* v. *Thompson,* 212 Cal. 388 [298 Pac. 808]; *Rossi* v. *Jedlick,* 115 Cal. App. 230 [1 Pac. (2d) 1065]).

Plaintiff concedes that the statutory requirements were not met, but contends that the agreement having been valid when executed, as was found by the trial court, and deliveries of merchandise pursuant thereto having been made after the company was incorporated, this was tantamount to an election to adopt its terms and conditions as those of a new subscription agreement and that defendant is consequently liable. That such facts standing alone might have the effect claimed finds support in *Moore* v. *Moffatt,* 188 Cal. 1 [204 Pac. 220], where, notwithstanding a subscription agreement was executed previous to the procurement of a permit required by the Investment Companies Act (Stats. 1913, p. 715) a valid permit was subsequently obtained, and pursuant thereto the stock was issued and accepted. But in the case at bar the subscription agreement provided for payment in merchandise, and the application was for permission "to sell and issue one thousand (1,000) shares of class A preferred stock for the par value thereof, to wit, one hundred thousand ($100,000) dollars, to net the corporation one hundred per cent (100%)", and the permit obtained provided that the same should be sold "at par for cash lawful money of the United States and so as to net applicant the full amount of the selling price thereof".

The resolution adopted by the directors of the corporation authorizing the issuance of the stock provided that the same should be sold for cash, and a copy of the resolution was filed with the commissioner. The only portion of the application which might have directed the commissioner's attention to the plan the organizers of the corporation apparently had in mind was the following: "The bulk of said stock will be issued to persons who are stockholders in said J. J. Milburn & Co., and the balance will be issued to parties from whom new merchandise is to be purchased for sale

in said business as aforesaid.'' This did not clearly disclose their intention, but the company's representative who presented the application testified that he explained to the commissioner that no cash would be actually received from certain of the subscribers, but merchandise in lieu thereof. According to the testimony of the corporation commissioner he did not understand that such was to be the case, otherwise the permit would not have been drawn in the form in which it issued. The statements in the application were by no means plain, and the question was one for the trial court. The evidence was sufficient to support its conclusion that the commissioner's permit expressed exactly his determination upon the facts presented to him. It is admitted that the permit was never modified and that no other was procured. The stock was not issued in conformity with the permit; and where such is the case section 12 of the Corporate Securities Act declared the same to be void, and section 13 of the same act that any company so issuing its stock would be guilty of a public offense.

 Where a statute prohibits or attaches a penalty to the doing of an act the act is void (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]); and this is true of an issuance of stock in violation of the permit granted by the corporation commissioner (*Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225]; *Live Oak Cemetery Assn.* v. *Adamson,* 106 Cal. App. (Supp.) 783 [288 Pac. 29]; *Commercial Bldg. Co.* v. *Levy,* 108 Cal. App. 54 [290 Pac. 1048, 1049]; *Otten* v. *Riescner Chocolate Co.,* 82 Cal. App. 83 [254 Pac. 942]; *Becker* v. *Steinman,* 115 Cal. App. 740 [2 Pac. (2d) 444]; *Domenigone* v. *Imperial etc. Mortgage Co.,* 189 Cal. 467 [209 Pac. 36]; *Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322]; *Barton* v. *El Canto Apartments,* 216 Cal. 500 [14 Pac. (2d) 501]). Moreover, the doctrines of estoppel by conduct and ratification have no application to a contract which violates an express mandate of the law (*Pollak* v. *Staunton,* 210 Cal. 656 [293 Pac. 26]).

 Nor do the facts bring the case within the exception noted in such cases as *Mitchell* v. *Grass Valley Gold Mines Co.,* 206 Cal. 609 [275 Pac. 418]. The creditor in actions of this character affirms the contract of the corporation, and cannot recover if by reason of a defense good against the

corporation the latter could not recover thereon (*Spencer* v. *Anderson,* 193 Cal. 1 [35 A. L. R. 822, 222 Pac. 355]).

In *Commercial Bldg. Co.* v. *Levy, supra,* the court pointed out the opportunities for fraud if corporations were allowed to depart from the terms of permits directing sales to be made for cash. As the court said: "The policy of the enactment is to protect buyers from the possibility of injury as far as the law will permit. Irrespective of the integrity of the organizers or directors of the corporation the law must be obeyed. If under a permit to sell for cash only some of the stock should be sold for cash and some on deferred payments irrespective of the permit, those who purchased for cash might find the assets of the corporation tied up in some project wherein the directors had invested in reliance upon unfulfilled promises, with the result that further headway was impossible and the funds invested lost."

We are satisfied that the conclusions of the trial court from the facts are correct, and that nothing has been shown which would warrant a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 7, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1932.