[Civ. No. 9984. Second Appellate District, Division One.—November 26, 1935.]

G. M. DUNTLEY, Appellant, v. L. R. KAGARISE, Respondent.

[Civ. No. 9985. Second Appellate District, Division One.—November 26, 1935.]

FRED A. RUSSELL, Appellant, v. L. R. KAGARISE, Respondent.

Hugh Gordon, C. W. Byrer and Arlo D. Poe for Appellants.

Athearn, Chandler & Farmer and Edward C. Chandler for Respondent.

EDMONDS, J., *pro tem.*—These cases raise the same question. Each action was brought upon a promissory note given in part payment of the purchase price of certain stock of Inter-City Parcel Service, Inc., a California corporation. The defense in each case is that the notes are void because at the time of the execution and delivery of the notes, the stock was in escrow under a permit of the commissioner of corporations, and that his consent to the sale was not obtained. The trial court decided that the notes are void, and each plaintiff has appealed from the judgment entered against him.

Respondent Kagarise was one of the original incorporators of Inter-City Parcel Service, Inc., which in 1925 was authorized by the commissioner of corporations to issue certain shares of its capital stock. The permit therefor provided that all certificates evidencing the shares authorized to be issued "shall be forthwith deposited with a depositary . . . to be held as an escrow pending the further order of said Commissioner; . . . and that while said certificates shall be so held, the holder of the shares evidenced thereby shall not sell, or offer for sale, or otherwise transfer, or agree to sell, or trans-

fer such shares, until the written consent of said Commissioner shall have been obtained so to do''.

In 1928 each of the appellants was the owner of 100 1/5 shares of the capital stock of the corporation and each was a director therein. Each gave to the respondent an option on the stock owned by him. These options were later exercised by the respondent, who executed the notes sued upon and received from each appellant an assignment of his stock. These instruments, identical in form, recite that the ''stock is now held in escrow pursuant to previous orders of the Commissioner of Corporations of the State of California, and I hereby authorize and instruct said Commissioner of Corporations to deliver said stock certificate to L. R. Kagarise on presentation of this order''. Subsequent to the delivery of the assignments respondent exercised the right of dominion and control over the stock and appellants took no further part in the management of the business.

In January, 1929, appellants filed with the commissioner of corporations a request for his consent to the transfer theretofore made. In this application appellants stated that the transaction with respondent was consummated in ignorance of the terms of the permit under which the stock was held in escrow, and that they assumed respondent would see that all legal requirements were complied with. The application was granted with the requirement that certificates evidencing the shares authorized to be transferred should continue to be held in escrow in accordance with the terms of the original permit.

Shortly thereafter respondent made a further application to the commissioner of corporations in which he represented that he desired to transfer the stock acquired by him from appellants and another person not a party to this litigation, together with his own stock, in escrow, except for four shares to be released and to be used as directors' qualifying shares. This application was granted.

Appellants seek to avoid the effect of the Corporate Securities Act (Deering's Gen. Laws, 1931 Ed., Act 3814) and the restrictions of the permit of the commissioner of corporations made thereunder, by taking either of two positions. In the first place, they assert that there is a distinction between sales of stock on the original issue thereof and sales of stock which has been validly issued and impounded in escrow. As a second point they maintain that the parties adopted the

terms of the original transaction after the consent of the commissioner of corporations had been obtained, thereby creating a new agreement which the court may enforce.

Considering the first point presented, a sale of stock originally validly issued may be void. This was pointed out in *Otten* v. *Riesener Chocolate Co.,* 82 Cal. App. 83 [254 Pac. 942], where the court said that it was "the illegality of the sale of the stock and not the illegality of the issuance of the stock which justifies the judgment in respondent's favor for the return of the purchase price paid". That is exactly the situation here. It is not claimed that the stock for which respondent's notes were given was originally issued in violation of any provision of the Corporate Securities Act. On the contrary, the record shows that it was issued and placed in escrow pursuant to the provisions of a permit of the commissioner of corporations authorizing the same. Under the Corporate Securities Act the commissioner may require stock to be placed in escrow (*Agnew* v. *Daugherty,* 189 Cal. 446 [209 Pac. 34]) and there is nothing in the conditions of the permit impounding the stock here in question which appear unreasonable. Moreover, there is no issue presented raising that question.

But the act provides that any person who wilfully violates or fails to comply with any of the provisions of the act or who neglects to obey or comply with any permit of the commissioner made thereunder, is guilty of a public offense. ██ "The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void." (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14].) It follows, therefore, that the attempted sales made by the appellants are void because made in violation of the provisions of the permit of the commissioner of corporations. (*Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322]; *Imperial Livestock etc. Co.* v. *Tracy,* 208 Cal. 205 [281 Pac. 50]; *Herkner* v. *Rubin,* 126 Cal. App. 677, 681 [14 Pac. (2d) 1043].)

██ In urging their second point appellants concede "that the rule has been announced repeatedly that the doctrines of estoppel and ratification have no application to contracts which are void by reason of statutory prohibition, or their being contrary to good morals". This is unquestionably the law. (*Herkner* v. *Rubin, supra.*) ██ But they insist that

the terms of the original transactions were impliedly adopted by the parties thereto after the consent of the commissioner of corporations had been obtained for the transfer of the stock in escrow. For support of their position they rely upon *Moore* v. *Moffatt,* 188 Cal. 1 [204 Pac. 220], and *Waring* v. *Pitcher,* 135 Cal. App. 493 [27 Pac. (2d) 397]. Each of these cases, however, rests upon facts which do not appear in the case at bar.

*Moore* v. *Moffatt, supra,* is an action brought by the trustee of a bankrupt corporation to recover under the trust fund theory an amount equal to the difference between the sums paid on a subscription agreement for stock and its par value. It was conceded that the subscription agreement was void because it was executed prior to authorization for the sale of the stock as then required by the investment company's act (Stats. 1913, p. 715). The Supreme Court in affirming a judgment in favor of plaintiff pointed out that the stock was not issued until after a permit had been issued. ''This being so,'' the court said, ''the subscription agreement, even though it may have been void and incapable of acceptance in the first instance, should, in the light of the subsequent conduct of the parties to the transaction, be considered and construed as a continuing offer to subscribe for the stock in question, pending the procurement of a permit from the corporation commissioner, which ultimately became the embodiment and expression of a new agreement to purchase the stock entered into at a time when the only legal obstacle in the way of a valid agreement had been overcome.''

This decision is based upon the conduct of the parties with relation to the subscription agreement after the issuance of the permit. The court said: ''Of course, the parties to the transaction could not, nor did they, as a matter of law, by their adoption of the agreement ratify and thereby validate as of the time of its original making or any time thereafter an agreement which may have been void in the first instance. But the parties could, and we think they did, when the bar of the statute to the making and acceptance of a valid agreement had been removed, elect to adopt and accept and stand upon the subscription agreement already signed as embodying— even though it may have been ineffectual at the time it was signed—the terms and conditions of a new agreement by which their future dealings were to be governed.''

The decision in *Waring* v. *Pitcher, supra,* was an action to recover upon the liability of a stockholder, and is based upon *Moore* v. *Moffatt, supra.* It also allowed a recovery but upon the ground "that as the corporation was in existence when the certificate was delivered to plaintiff and held a valid permit to issue stock at that time, appellant's act of accepting and retaining the certificate had the same legal effect as a new and independent contract for the sale of stock as of the time of such delivery".

It was "the terms and conditions of a new agreement" which the court in the first case found that the parties had made by their acts and conduct, and "the new and independent contract" created by the delivery and acceptance of the stock in the second case upon which recovery was allowed. This is emphasized in *Imperial Livestock etc. Co.* v. *Tracy, supra,* where the court in discussing *Moore* v. *Moffatt, supra,* pointed out that the holding in the latter case was "that the acts of the parties were tantamount to an adoption by them of the terms and conditions of the subscription agreement as of the date of its ultimate acceptance, (211) . . . The contract, which really was a contract created by law to pay the unpaid portion of capital stock issued to, and accepted by the defendants, . . . only, was involved, whereas in the instant case the attempt is made to give vitality and validity to tainted and void contracts by renewals thereof. (213)" Also in *Walker* v. *Harbor Realty etc. Corp.,* 214 Cal. 46, 48 [3 Pac. (2d) 557], the court cited *Moore* v. *Moffatt, supra,* as one of a group of cases "where rights of others than the parties to the void sale or contract were involved and the buyer had by his own conduct made himself answerable to the claims of third parties".

Appellants' actions are brought upon the notes delivered as part consideration of the stock and given at a time when they were prohibited from transferring it. It was not brought upon *assumpsit* or upon any other agreement of the parties than the promissory notes. Furthermore, there is no factual basis shown for a recovery upon the theory of a new agreement made after the notes were given. So far as the record shows there was no communication between the parties relating to the transaction after the notes were given. The belated application of appellants to the commissioner of corporations for his consent to the transfer of their stock in escrow was

made, according to the undisputed evidence, at their own instance and after they themselves had found such consent to be necessary. There is nothing to show that respondent took any part in this or knew that it was being done. Apparently he did nothing with the assignments which he procured from appellants at the time he gave his notes until some months later when he filed his application with the commissioner of corporations for authority to transfer it and other stock. There was no conduct of the respondent which may be said to provide the basis of new agreements with appellants adopting the terms and conditions of the original ones. Appellants therefore cannot recover upon their notes and the judgment must be affirmed.

██ Although it appears that respondent acquired the stock of appellants who were his business associates and now refuses to pay for it, even though he apparently received all of the benefits of the transaction, a question of public policy is involved. As was said in the case of *Imperial Livestock etc. Co.* v. *Tracy*, 208 Cal. 205, 213 [281 Pac. 50], "The issues presented in this cause relate to matters of public policy. If no other persons were involved, and the principle reached no farther than the respective parties to this cause, we might consider seriously the contention of the appellant that the renewal notes, instead of being considered on the same basis, should be treated as a new subscription for the shares of stock in the plaintiff corporation, and valid and enforceable obligations. To do so, however, would be to open the door to all the illegal practices condemned by the Corporate Securities Act."

Judgments affirmed.

York, Acting P. J., and Doran, J., concurred.