[Civ. No. 15251. Second Dist., Div. One. Oct. 9, 1946.]

TIMOTHY JOHN STALLMAN et al., Respondents, v. JOHN N. SCHWARTZ, Appellant.

Entenza & Gramer and John J. Craig for Appellant.

Walter E. Egerman for Respondents.

WHITE, J.—By their complaint filed herein plaintiffs alleged that on or about July 23, 1944, defendant through the medium of false and fraudulent representations induced them to purchase one and one-third shares of the capital stock of Air Utilities Corporation, which one and one-third shares represented one-third of the total stock issued by said corporation. It was further alleged that as consideration for the purchase of said stock plaintiffs paid to defendant the sum of $5,000 consisting of $1,500 in cash and a promissory note for $3,500 secured by a deed of trust on certain real property. The complaint further alleged that in addition to the foregoing, plaintiffs made to defendant three payments of $35 each or a total of $105 on account of the above note and trust deed.

Defendant's answer contains a general and specific denial of plaintiffs' charges of fraud and misrepresentation, as well as a denial that plaintiffs gave to defendant the sum of $1,500 or any sum of money whatsoever.

Trial before the court resulted in a judgment for plaintiffs from which defendant John N. Schwartz prosecutes this appeal.

Epitomizing the facts which gave rise to this litigation, we find in the record evidence that defendant and three others were the incorporators of Air Utilities Corporation, organized under the laws of the State of California. A permit to issue stock was granted by the Division of Corporations of California authorizing the issuance of four shares thereof for $10 per share. Only four shares were issued, of which the defendant held one. Another share was held by William Hargrave. Defendant is the brother-in-law of plaintiff Mr. Stallman, the latter's sister being married to the former. According to the plaintiffs' testimony, the defendant and his wife called at their home, where defendant represented to plaintiffs that the corporation's business was being hampered by the actions of Mr. Hargrave, one of the incorporators; that defendant could not trust him and desired to bring about his retirement from the business; that defendant stated, "If you come into this firm, we could perfect a better feeling between us, and we could get along. We have a $91,000 contract here, and the potential profits will exceed $50,000. . . . If you can raise $5,000 and come into the business, you are secured; you don't have to worry a minute, because you will get one-third of the profits of the contract; and . . . it has been a going business right along, and this is an opportunity for you."

Plaintiff Mr. Stallman further testified concerning his conversation with the defendant as follows:

"He said for $5,000 I could get one and a third shares, which would constitute one-third of the ownership of the corporation stock. I said, 'Johnny, I haven't got $5,000.' He said, 'Well, you've got a Buick car, a good car, and it would bring a big price.' He said, 'You can sell that to pay up what cash you can, and I'll take a second mortgage on your property.' He also said, 'The stock is well worth over that amount.' Another objection I raised—I said, 'I am a pie-man; I have been on the job a good many years, and I don't know anything about that kind of a job.' He conceded the fact that Mr. Hargrave was a very good machinist. He said, 'He's an awfully good machinist, and a good promoter. The only trouble is, I can't trust him; and since we have that feeling, we can't get together.' "

Subsequently, plaintiff Mr. Stallman sold his automobile for $1,200, borrowed $300 from a finance company, executed the aforesaid promissory note and trust deed, and delivered the cash and documents to the defendant, receiving therefor

the one and one-third shares of capital stock in the aforesaid corporation.

Appellant's sole contention on appeal being that several of the findings are not supported by the evidence, it is unnecessary to here narrate more of the testimony in detail. It will be referred to as we consider the respective findings against which appellant directs his attack.

It is first contended that finding IV to the effect "that all of plaintiffs' negotiations, transactions, dealings and purchase of one and one-third (1⅓) shares of stock . . . were made directly between plaintiffs and defendant" is not supported by the evidence. In this regard, appellant asserts that a reading of the contract of sale and purchase of the stock in question will show that the sale of such stock was between defendant and Hargrave as vendors and plaintiff Mr. Stallman as purchaser. There is, however, in the record substantial evidence that all representations of and concerning the stock were made by defendant to plaintiff Mr. Stallman, and in answer to a question, "How much were you going to pay Mr. Hargrave?" plaintiff Mr. Stallman testified, "I wasn't going to pay Mr. Hargrave anything, so far as I was concerned; he only entered into the agreement through the arrangement he (Hargrave) had with Mr. Schwartz. He demanded $2,500 in cash from Mr. Schwartz."

There was also introduced into evidence, as an exhibit, the agreement for the transfer and sale of Mr. Hargrave's stock. This document conclusively shows that the stock was purchased from Mr. Hargrave by the defendant and paid for by the defendant with his personal check.

Finding V, subdivision (1), "that defendant John N. Schwartz, represented to plaintiffs that a certain one and one-third (1⅓) shares of the common stock of a corporation known as Air Utilities Corporation, a California corporation, was worth in excess of Five Thousand ($5,000.00) dollars book value," is challenged on the ground that the same is not supported by the evidence. This claim is without merit. There is positive testimony in the record that in a conversation between plaintiff Mr. Stallman and defendant, the latter stated, ". . . We have a $91,000 contract here, and the potential profits will exceed $50,000. If you can raise $5,000 and come into the business, you are secured; you don't have to worry a minute, because you will get one-third of the profits of the contract; and, it has been a going business right along and

this is an opportunity for you.'' The representation that if plaintiff would invest $5,000 he would be secured is sufficient to amount to a representation that the stock was worth the amount of the investment or more.

There is abundant evidence in the record to support the finding that the defendant represented to plaintiffs that the corporation had a $91,000 contract for work to be done by it, and contrary to appellant's contention the court did find that such representation was untrue and that the falsity of such representation was not discovered by plaintiff Mr. Stallman until shortly prior to the filing of this action.

Appellant assails as not supported by the evidence, the court's findings that the defendant represented ''that said corporation was a going business concern and in a very solvent condition,'' and ''that said one and one-third shares of stock representing a total of one-third of the capital stock of the corporation, would net to the plaintiffs, for their investment of $5,000, a total profit in excess of $50,000.''

As to the first above quoted finding, the very testimony referred to by appellant supports such finding. We refer to the testimony wherein defendant was quoted as saying, ''We have a fine business here and the potential profits will exceed $50,000'' and ''it has been a going business right along, and this is an opportunity for you.'' Appellant argues that such evidence ''is nothing more than sales talk or the expression of an opinion.'' But the case at bar presents a situation wherein the defendant possessed, or assumed to possess, superior knowledge regarding the matter of the representations as to the condition of the business, and which knowledge was not equally open to plaintiffs. Therefore, what might otherwise be regarded as an expression of opinion may amount to an affirmation of fact (*Eade* v. *Reich*, 120 Cal.App. 32, 35 [7 P.2d 1043]). When one suggests as a fact that which is not true, when he does not believe it to be true, such conduct amounts to deceit (Civ. Code, § 1710). And, as was said in *Togni* v. *Taminelli*, 11 Cal.App. 7, 14 [103 P. 899], ''No one has a right, either in law or in morals, to complain because another has placed too great reliance upon the truth of what he himself has stated.'' The law does not require that a person must assume that everyone with whom he has a business transaction is a rogue and act accordingly. Courts are, therefore, inclined to hold that one can act upon the assumption that there exists no intention to cheat or defraud him, or as

was said in *Tracy v. Smith*, 175 Cal. 161, 165 [165 P. 535], "the fraudulent vendor can not escape from liability by asking the court to applaud his fraud and condemn his victim for his credulity."

Concerning the last above mentioned finding, it may be said that the same is supported by ample evidence and reasonable inferences deducible therefrom. For instance, the defendant represented to plaintiff Mr. Stallman that "we have a $91,000 contract and the potential profits will exceed $50,000 . . . you (the plaintiff Mr. Stallman) will get one-third of the profits of the contract." This was not, as contended by appellant, "merely sales talk" but amounted to fraud and deceit because, first of all, the corporation did not have $91,000 in contracts but only approximately $79,000 in purchase orders, which was known to the defendant, while the condition of the business was such that the trial court was justified in concluding, as it did, that the defendant was aware that the corporation was not a "going business concern and in a solvent condition"; that the corporation did not have $91,000 in contracts, and that defendant knew plaintiffs would not realize anything like a profit of $50,000 on their $5,000 investment.

Appellant's contention that the court's finding that certain false and fraudulent representations were made by defendant to the plaintiffs; that plaintiffs relied upon such representations, and by reason of such reliance paid to defendant the sum of $5,000 in cash and by way of a trust deed and promissory note is not supported by the evidence is without merit. Testimony hereinbefore narrated amply supports the questioned finding.

Contrary to appellant's claim, there is substantial evidence to support the findings that "said stock was worthless"; that the original stockholders, including defendant, paid nothing for their stock and that such stock was issued contrary to the terms of the permit granted by the California Commissioner of Corporations and therefore was a void sale of stock. The fact that the corporation was adjudicated a bankrupt in the United States District Court on February 10, 1944, was the strongest kind of evidence of the worthlessness of the stock at that time, while other competent and material evidence hereinbefore referred to, warranted the conclusion by the court that the stock was worthless at the time it was sold by defendant to the plaintiff Mr. Stallman.

■ With reference to the claimed legality of the original sale of stock, appellant asserts that the court's finding that no money was paid for such stock in conformity with the permit issued by the Commissioner of Corporations, is "absolutely contrary to the evidence for the evidence shows conclusively that the $10 cash per share was paid by the defendant for the stock." This contention cannot be sustained. With reference to any actual payment being made for the stock originally issued, defendant testified, "I mean the original stock was issued for the four stockholders who started the corporation, free gratis. . . . I didn't pay any money for the stock." Further testimony reiterating this was given by the defendant. Subsequently, during the trial after the noon recess defendant sought to change his testimony by stating that $10 was paid by each of the four incorporators for such stock; that the payments were made in cash, but as to what fund such payments were credited to, defendant testified, "I don't know, but I think it was petty cash." On recross examination, when asked if he recalled his previous testimony given at the morning session of court, the defendant's answer was, "Not completely." For the purpose of impeaching the defendant's testimony, it was established that he had previously been convicted of a felony, the essence of which was fraud. In this state of the record the court was justified in finding that no payment of cash or its equivalent was made for the original issue of the four shares of capital stock of the corporation, and that the original issue of stock, having been made in violation of the terms of the permit granted by the Commissioner of Corporations, the sale thereof to plaintiffs was void. ■ An action for money had and received will lie to recover any money paid to an individual or corporation for the issuance of corporate securities when such issuance is in violation of the Corporate Securities Act [Stats. 1917, p. 673; 2 Deering's Gen. Laws, Act 3814] (*Ramirez* v. *Thomas Productions, Ltd.,* 10 Cal.App.2d 338 340 [51 P.2d 895]).

■ The court's finding "that in truth and in fact at the time of such representations, the said corporation was in the process of having its ninety-one thousand ($91,000) dollar contract cancelled" is supported by the testimony of plaintiff Mr. Stallman that "several weeks after I was in the organization, the outside man of the Western Industrial Engineering

Company came in one day——. . . . I found out definitely they were cancelling the contract, and that it had been under consideration for cancellation for quite a few weeks.... . ''

The same reasons which justified the court's finding that the stock was worthless, and the finding that the corporation ''instead of making any money at any time whatsoever, was actually at all times losing money,'' supported the finding last above quoted.

 The finding that plaintiff Mr. Stallman did rescind and demand the return of his investment finds supports in the following testimony given by said plaintiff:

''Q: About what time of month was it?

''A: It was on Sunday, I would say the early part of January.

''Q: What was said between you and Mr. Schwartz?

''A: Mr. Schwartz said several times to me that I didn't have to worry about the mortgage; that he wouldn't foreclose it. So I said to him, 'Mr. Schwartz, if you will give me back the mortgage on my property, you can have the $1,500,' and he said, 'Absolutely not; I'll foreclose on you and sue you.' And I said, 'I'll sue you, then, if that's the way you feel about it,'—and that was this court action that was brought.''

There is no merit to appellant's final contention that the court erred in ordering cancellation of the promissory note and trust deed. Appellant's argument in this regard is grounded on the claim that such instruments not only secured the purchase money for the stock sold by the defendant Schwartz, but in addition secured the $1,000 that was loaned by defendant to plaintiffs to pay on the stock purchased by them from Mr. Hargrave. But Mr. Hargrave did not sell his stock to the plaintiffs. As heretofore pointed out, the agreement for the sale of Hargrave's stock was between him and defendant, evidenced by a written instrument which was introduced into evidence. As plaintiff Mr. Stallman testified:

''Q: So that actually you were given $1,000 by Mr. Schwartz in order to complete the transaction, were you not?

''A: No, Mr. Schwartz put that $1,000 up of his own accord to make the deal possible for Mr. Hargrave to get his one-half out in cash.''

There is ample and substantial evidence that plaintiffs' dealings were all directly with the defendant and both the trust deed and promissory note in question were in the possession of the defendant at the time of trial. Therefore, that

portion of the judgment ordering cancellation of such documents was proper.

For the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.