[L. A. No. 23929.   In Bank.   May 22, 1956.]

E. E. WELLS et al., Respondents, v. H. THOMAS COMSTOCK et al., Appellants.

William J. Currer, Jr., for Appellants.

Trihey & Mirich and Joseph M. Trihey for Respondents.

SCHAUER, J.—By written contract plaintiffs Reynolds and Wells agreed to sell and defendant Comstock agreed to buy 440 shares of corporate stock evidenced by described certificates, and defendant Mendizza guaranteed Comstock's performance. In this action for breach of contract plaintiffs recovered a money judgment against Comstock based on his refusal to pay the agreed price and against defendant Mendizza based on her guaranty.

The principal defense at the trial, and defendants' principal contention on this appeal, is that the contract is unenforceable because 380 of the shares were illegally issued. The trial court found that plaintiffs, officers of the issuing corporation, had caused 380 of the shares to be issued to plaintiff Reynolds in violation of the permit of the Commissioner of Corporations; that defendant Comstock "participated in and induced the issuance" of the 380 shares with knowledge that the permit was violated, and that Comstock is therefore "estopped"

to assert that the shares were illegally issued. We have determined that the court's so-called "finding" of estoppel is an erroneous conclusion of law; that the contract is unenforceable not only because of the original illegality in the issuance of the 380 shares (Corp. Code, § 26100) but also because the contract itself violates penal sanctions of the Corporate Securities Act (Corp. Code, § 26104); and that the guaranty is also unenforceable because of the illegality of the principal obligation.

As will appear from the following summary, the evidence supports the findings of fact (although not the so-called "finding" that defendant is estopped to assert illegality) and refutes the assertions of both defendant Comstock and plaintiffs in their respective briefs that their respective conduct which resulted in the contract was in good faith:

Plaintiff Reynolds was president, plaintiff Wells was treasurer, and both were directors of Finance Control, a California corporation which was organized about July, 1952. Defendant Comstock, although he was not an officer or director of the corporation, was its active general manager and attended all meetings of the directors.

As defendant Comstock knew, the corporation applied to the Commissioner of Corporations for a permit to issue its stock for $10 cash a share. By permit of October 1, 1952, the corporation was authorized to issue to Reynolds or Wells 500 shares for $10 cash a share. The directors and officers of the corporation, however, agreed that stock would be issued to Reynolds not for cash but for services. At Comstock's request, Reynolds agreed that the stock issued to Reynolds would be held by Reynolds for Comstock.

Comstock arranged for his father-in-law to loan the corporation $3,800. The corporation gave the father-in-law a note for $3,800, which was subsequently paid. The corporation used the $3,800 to buy real estate. The records of the corporation falsely show that the $3,800 was paid by Reynolds for 380 shares of stock which were issued to him in December, 1952, and March, 1953. In fact Reynolds paid no cash for the issuance of these 380 shares. For 25 additional shares which were issued to Reynolds he paid $10 cash a share which was furnished by Comstock.

On June 19, 1953, plaintiffs Reynolds and Wells and defendant Comstock entered into the written contract here sued on, with defendant Mendizza guaranteeing Comstock's performance. Reynolds agreed to sell Comstock 405 designated shares and Wells agreed to sell Comstock 35 designated shares

of the stock of Finance Control for $11,998.80, payable $2,000 upon execution of the agreement and $9,998.80 within 15 days. Of the 405 shares which Reynolds agreed to sell, 380 were the shares above described which were issued in violation of the permit of the Commissioner of Corporations, and 25 were the shares above described for which Comstock had furnished the cash. Plaintiffs transferred the 440 shares to Comstock. Comstock paid the $2,000 and refused to pay the balance.

█ Manifestly, as Comstock points out, the issuance of the 380 shares was in violation of the implied prohibition of the Corporate Securities Act found in section 26100 of the Corporations Code: "Every security of its own issue sold or issued by a company with the authorization of the commissioner but which has been sold or issued in nonconformity with any provision in the permit authorizing the issuance or sale of the security is void."

Furthermore, although the parties neglect to mention this fact, both plaintiffs and Comstock appear to have violated penal sections of the Corporate Securities Act, the provisions of section 26104 of the Corporations Code that "Every officer, agent or employee of any company and every other person, who does any of the following acts is guilty of a public offense . . . (a) Knowingly authorizes, directs, or aids in the issue or sale of . . . any security, in nonconformity with a permit of the commissioner then in effect authorizing such issue . . . (d) With knowledge that any security has been issued or executed in violation of any provision of this division [which includes Corp. Code, § 26100, *supra*], sells or offers the security for sale . . . (f) In any respect wilfully violates . . . any . . . permit . . . of the commissioner under this division. (g) With one or more other persons, conspires to violate any permit . . ." █ Enforcement of sales, and contracts growing out of sales, in violation of these penal sanctions can be denied. (*Duntley* v. *Kagarise* (1935), 10 Cal.App.2d 394, 397 [52 P.2d 560].)

Both parties advance arguments based upon the general purpose of the Corporate Securities Act to protect the public against fraudulent or unlawful stock schemes. Where, as here. both parties with full knowledge have joined in the illegal scheme, there can be no problem of applying the above quoted sections of the Corporate Securities Act to protect one from the other. (*Cf. Regulation and Civil Liability under the California Corporate Securities Act : III, IV,* T. W. Dahlquist, Member of the California Bar (1946), 34 Cal.L.Rev. 543,

695.) █ As in any other case of illegality which renders a bargain unenforceable, ''The courts will leave them where they were when the action was begun.'' (*Bank of Orland* v. *Harlan* (1922), 188 Cal. 413, 422 [206 P. 75].) █ And illegality which renders a bargain unenforceable has that effect whether the evidence of the illegality is produced by plaintiff or by defendant (*Loving & Evans* v. *Blick* (1949), 33 Cal.2d 603, 607 [204 P.2d 23]) and whether or not the question of the effect of the illegality is raised by either party (*Domenigoni* v. *Imperial Live Stock etc. Co.* (1922), 189 Cal. 467, 475 [209 P. 36]).

█ The policy against enforcement of illegal bargains (except in situations where the illegality of one party is less than that of another, or there are special circumstances not here present) is thus explained in the Restatement of the Law of Contracts, section 598, comment a: ''the rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages. That in itself would generally be a desirable thing. When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief.''

█ In the light of the foregoing principles, it is clear that (at least in the absence of special circumstances not shown here) no person can be estopped from asserting the illegality of the transaction. (*Fewel & Dawes, Inc.* v. *Pratt* (1941), 17 Cal.2d 85, 91 [109 P.2d 650].) █ Since the trial court's mistaken conclusion of estoppel is not supported by the facts found, it must be disregarded. (*Hunter* v. *Sparling* (1948), 87 Cal.App.2d 711, 721 [197 P.2d 807].)

Plaintiffs rely upon *C. I. T. Corp.* v. *Breckenridge* (1944), 63 Cal.App.2d 198, 200 [146 P.2d 271], where it is said, '' 'The test . . . whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant.' '' It does not appear that this language should be understood to mean that if a plaintiff can open his case without showing that he has broken the law,[1] the court will assist

---

[1] Here, plaintiffs point out, they alleged and defendants admitted the execution of the written agreement of June 19, 1953, and Comstock's refusal to pay the balance due under the agreement. The illegality first appeared from the testimony of witnesses called by defendants.

him even though it subsequently appears that he is relying on a transaction in which he has broken the law. To attribute such meaning to the quoted "test" would be manifestly inconsistent with the above stated settled rules as to illegality.

■ Plaintiffs assert that the contract sued upon is not itself illegal, and rely upon the rule stated in section 597 of the Restatement of the Law of Contracts: "A bargain collaterally and remotely connected with an illegal purpose or act is not rendered illegal thereby if proof of the bargain can be made without relying upon the illegal transaction." To this claim of plaintiffs there are two answers. First, as already indicated, by making the contract sued on plaintiffs and Comstock contravened the prohibition (Corp. Code, § 26104, subd. (d)) against sale of a security with knowledge that it has been issued in violation of permit. Second, the illegal issuance of the securities was intimately, not collaterally, connected with their subsequent sale to Comstock; plaintiffs issued them, and Comstock participated in their issuance, with the intent that they would be sold to Comstock. As stated in comment b to section 597, *supra,* "Even though a plaintiff's case can be made out without indicating anything unlawful, it may be shown that the bargain is illegal because of facts not brought out in the plaintiff's case, provided that the facts so offered show a close enough connection with an illegal transaction."

■ Since the principal obligation of the contract is unenforceable because of illegality, the guaranty too is unenforceable. (Civ. Code, § 2810; *Jack* v. *Sinsheimer* (1899), 125 Cal. 563, 568 [58 P. 130]; Rest., Security, § 117.)

Defendant Comstock cross-complained, alleging a common count for money had and received. Plaintiffs' answer to the cross-complaint consists of denials. At the trial defendants' counsel asserted that the "basis of the cross-complaint" is that Comstock "did not receive full value for the $2,000" which he admittedly paid under the contract. The trial court made no findings as to the cross-complaint. The parties make no point of this omission. From the foregoing discussion it is apparent that Comstock could no more have recovered from plaintiffs than they can recover from him.

For the reasons above stated, the judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.