[Civ. No. 19272.   First Dist., Div. Two.   Nov. 13, 1961.]

GRACE PEREGO, Respondent, v. DAVID SEYMOUR,
Appellant.

Joseph J. Cogen for Appellant.

Theodore M. Monell for Respondent.

AGEE, J.—Defendant Seymour appeals from a money
judgment obtained by plaintiff on the basis that she was en-

titled to a commission on the sale of certain corporate stock. The appeal of appellant Shore has been dismissed, and all reference herein to "appellant" is to Seymour.

It will be necessary to relate some of the background. Appellant is what may be generally described as a promoter, and respondent is a real estate broker. After this transaction got started, she also applied for and obtained a license as a securities broker.

Marin Canalways and Development Co., a California corporation, was incorporated in 1946. Its principal asset consisted of approximately 900 acres of tidelands in Marin County, on which one Alice Maude Davis held a $50,000 deed of trust.

On June 8, 1949, the Corporation Commissioner issued a permit authorizing the issuance of 50,000 shares of preferred stock to Mrs. Davis in cancellation of the corporate debt to her and 36 shares of common stock to Phillips, Waymire, Shone and Gardiner. The permit required that the shares were to be deposited in escrow and "that the owner or person entitled to said shares shall not consummate a sale or transfer of said shares, or any interest therein, or receive any consideration therefor, until the written consent of said Commissioner shall have been obtained so to do." The shares were issued pursuant to said permit and constituted all of the outstanding or authorized stock. The articles provided that the corporation could retire the preferred stock at $1.00 per share. In June 1955, Waymire, pursuant to consent order first obtained from the Corporation Commissioner, transferred 4½ of his 9 shares to one Kettenhofen. The transfer was made subject to the terms and conditions of the permit of June 8, 1949.

In the fall of 1955, the holders of the common stock (hereafter usually referred to as the sellers) sought to sell their stock, with the ultimate end in view that the preferred stock would be retired, the corporation dissolved, and the land conveyed as a liquidating dividend in kind to the owner or owners of the common stock. This plan or method was apparently adopted for tax purposes.

The sellers contacted respondent and in December 1955, she got appellant interested in the tideland property. Appellant stated that he was acting for himself and some backers or associates.

Under date of January 3, 1956, the sellers agreed to pay respondent a commission of $50,000 if she consummated a

sale of their stock to appellant for $750,000. On January 19, 1956, a securities broker's license was issued by the Commissioner of Corporations to ''Grace Perego and Jackson H. Perego.'' Her application recited that she proposed to deal in the ''sale of outstanding shares in connection with the sale of real estate.''

On February 8, 1956, the sellers entered into a written agreement with respondent, by the terms of which she agreed to purchase all of the common stock for $700,000. This agreement provided that the sellers were ''released from all commission agreements heretofore made'' and that ''no commission shall be payable to any person on this sale.'' The agreement then set forth the following condition: ''It is understood that the sale of any of the stock of Marin Canalways & Development Co. is contingent . . . upon procurement of a permit from the Commissioner of Corporations.''

At the same time the sellers executed a separate written agreement that released respondent from all obligations under the sale agreement if she assigned it to Seymour, appellant herein, and if he personally assumed all of the obligations thereunder. Such assignment and assumption were executed immediately by respondent and appellant, respectively, and appellant signed a separate agreement in which he agreed to pay respondent $750,000 for the stock.

At this point, then, respondent no longer had any commission agreement with the sellers nor was she under any obligation to them under the sale agreement of February 8, 1956. What she did have, in effect, was an agreement with appellant to be paid a commission amounting to the difference between $750,000 and $700,000 upon the sale of the common stock to appellant under the terms and conditions of the sale agreement of February 8, 1956. As stated in respondent's brief: ''The facts and pleadings show that the sum of $50,000 was considered as compensation to respondent for her services as a security broker, and not as a profit from the proposed sale. The findings of the Court were in accordance with these allegations.''

On February 16, 1956, an escrow was opened by respondent with San Rafael Land Title Company and appellant deposited a check for $15,000 therein.

On February 21, 1956, Phillips and Shone (two of the sellers) gave written instructions to the title company that they were transferring their one-half of the common stock (18 shares) to the title company upon condition that they be

paid $200,000 in cash, plus a deed to a certain apartment house property free and clear of encumbrances, and plus a certain Cadillac automobile. The instructions expressly provided that the sale of their stock was to be closed on or before March 5, 1956, and that if this was not done, their agreement to sell on the foregoing terms was to be of no further force or effect. These instructions were approved by the remaining sellers. The deadline date of March 5, 1956, was never extended.

On February 24, 1956, an application was filed by all of the common stockholders (including Phillips and Shone) with the Corporation Commissioner for authority to transfer their stock to the title company. The application stated ". . . that said title company is not itself purchasing said stock but is to take the same as trustee for proposed purchasers, subject to further application and orders to be made herein."

On February 29, 1956, the Corporation Commissioner issued a "Consent to Transfer in Escrow," authorizing the transfer of said 36 shares of common stock to the title company "to be held as an escrow in accordance with the condition of the permit" issued on June 8, 1949.

On March 1, 1956, appellant and one Rolston, acting as attorney for appellant and his backers, went to the title company and deposited checks for $25,000 and $175,000. These checks cleared by March 5, 1956.

On March 2, 1956, appellant and the sellers (other than Phillips and Shone) executed an agreement supplementing the sale agreement of February 8, 1956. This supplemental agreement refers to the $215,000 already deposited with the title company and provides for the further deposit of $93,000 plus a note of $50,000 to Waymire, one of the sellers, plus a note of $50,000 to Kettenhofen, another seller, and finally a note of $292,000 to Waymire and Gardiner, secured by a pledge of the stock. The amount of cash and the notes thus aggregated $700,000.

It is further provided in the supplemental agreement that on March 5, 1956, out of the $215,000 already deposited by appellant, the title company is to pay $200,000 to Phillips and Shone and $15,000 to clear off the apartment house mortgage. It is then provided that the title company is to file an application with the Corporation Commissioner to transfer the 36 shares of common stock to appellant or his nominee and that therefore appellant "will proceed on March 5, 1956 to close

the Phillips and Shone portion of the deal so that they may be paid off in full.''

On March 3, 1956, supplementary escrow instructions were signed by appellant and Waymire, Gardiner and Kettenhofen in accordance with the basic agreement of February 8, 1956, as supplemented by the agreement of March 2, 1956. These instructions expressly adopt by reference the instructions of February 21, 1956, by Phillips and Shone, and recite that the title company is being handed the application referred to in the supplementary agreement and that it is to be mailed to the Corporation Commissioner on or before 5 o'clock p. m., Monday, March 5, 1956.

On March 5, 1956, respondent appeared at the title company with a letter from her attorney to the company, dated March 4, 1956, reciting that he had reviewed the instructions of March 3, 1956, and ''recommended that she approve said instructions, contingent however, upon the delivery to you, not later than March 15, 1956, of a promissory note in the sum of $50,000.00 . . .'' The respondent signed her approval of the instructions at the bottom of her attorney's letter and added to it the following amendment: ''The Note to me for $50,000.00 shall be in the form of the copy attached hereto. Also, San Rafael Land Title Company shall not be liable to me in any way if said Note is not delivered to it, or if the obligation of any of the parties to this escrow are not carried out by them.'' Also, on the last page of the escrow instructions, respondent signed her approval in the following typed words: ''I, Grace Perego, concur in and approve of the terms of the aforesaid escrow instructions, and hereby direct that all funds heretofore deposited in said escrow shall be paid or disbursed pursuant to the order of David Seymour or his nominee.'' To this she added in longhand: ''as amended by attached letter'' (of her attorney).

On March 5, 1956, shortly before 5 o'clock p. m., the title company deposited the application to the Corporation Commissioner in the mails and then and there paid $200,000 to Phillips and Shone, recorded the deed to the apartment house, paid $15,000 on the apartment house mortgage, and delivered the ''pink slip'' on the Cadillac. Thus, on March 5, 1956, Phillips and Shone were paid off in full for their stock.

The Corporation Commissioner received the application on March 6, 1956, and on March 9, 1956, issued a consent order permitting the transfer of all of the common stock to appel-

lant's nominee, Rolston. After the Corporation Commissioner had been advised of matters not disclosed in the application, a "Stop Memorandum" was issued, and on June 11, 1956, a revocation of the consent order of March 9, 1956, was issued.

## THE ILLEGALITY OF THE PRINCIPAL TRANSACTION

■ The principal transaction as set up in the escrow consists of the basic sale agreement of February 8, 1956, the Phillips-Shone instructions of February 21, 1956, the supplemental agreement of March 2, 1956, and the supplemental instructions of March 3, 1956.

This transaction was illegal and void because it provided for the receipt by Phillips and Shone of the purchase price of their shares prior to the obtaining of an order from the Corporation Commissioner consenting to the transfer of said shares to appellant or his nominee.

Section 25508 of the Corporations Code empowers the Commissioner of Corporations to "impose conditions requiring the deposit in escrow of securities, the impoundment of the proceeds from the sale thereof . . . and such other conditions as he deems reasonable and necessary or advisable for the protection of the public and the purchasers of the securities."

Section 26100 of the Corporations Code provides: "Every security of its own issue sold or issued by a company with the authorization of the commissioner but which has been sold or issued in nonconformity with any provision in the permit authorizing the issuance or sale of the security is void."

The permit of June 8, 1949, under which all of the common stock involved was issued, provided: ". . . the owner or persons entitled to said shares shall not consummate a sale or transfer of said shares, or any interest therein, or receive any consideration therefor until the written consent of said Commissioner shall have been obtained so to do."

As before stated, the entire issue of common stock was transferred to the title company under the consent order of February 29, 1956, requiring said stock to be held by it in escrow in accordance with the conditions of the permit of June 8, 1949.

The permit was violated on March 5, 1956, when Phillips and Shone received the entire consideration for the sale of their shares to appellant's nominee.

In *Bourke* v. *Frisk,* 92 Cal.App.2d 23 [206 P.2d 407], the purchase price of the stock was paid on March 10, 1946, but the permit was not issued until May 29, 1946. The stock

itself was issued and the certificate delivered to the purchaser on June 1, 1946. The court stated, at page 31: "In the latter cases [i.e., such as this] money was paid, an essential part of the sale, at a time when there could be no valid sale. Such essential part being tainted with illegality infected the entire transaction and completion of the sale by issuance of the shares at a later time could not make it valid. . . . The purpose of the Corporate Securities Act was to eliminate just such unregulated acceptance of money for corporate stock not legally issuable as is found in this case." (To the same effect: *Stonehocker* v. *Cassano*, 154 Cal.App.2d 732, 735-736 [316 P.2d 717]; *Duntley* v. *Kagarise*, 10 Cal. App.2d 394, 396-397 [52 P.2d 560].)

### DOES THE ILLEGALITY OF THE PRINCIPAL TRANSACTION PRECLUDE THE RESPONDENT'S RECOVERY OF A BROKERAGE COMMISSION?

Respondent was a party to the basic sale agreement of February 8, 1956, which expressly provided that "the sale of any of the stock of Marin Canalways & Development Co. is contingent . . . upon procurement of a permit from the Commissioner of Corporations." The supplemental agreement of March 2, 1956, in no way changed this. The transfer of the stock to the title company under the consent order of February 29, 1956, was based upon the application of February 24, 1956, which expressly stated "that said title company is not itself purchasing said stock but is to take the same as trustee for proposed purchasers, subject to further application and orders to be made herein." The escrow instructions of March 3, 1956, which were approved in writing by respondent, provided that the application to the Corporation Commissioner for consent to transfer the 36 shares of common stock from the title company to Rolston should be deposited in the mail at or before 5 o'clock p. m. on Monday, March 5, 1956. These instructions included by express reference the Shone-Phillips instructions of February 21, 1956, which provided that they were to be paid on or before March 5, 1956. Thus, respondent knew that Phillips and Shone would receive the entire consideration for the sale of their stock before the Corporation Commissioner would ever receive the application to transfer or act upon it.

It would appear clear that respondent had full knowledge of and participated in the events leading up to the transfer of consideration made before the necessary consent was ob-

tained from the Corporation Commissioner. Her agreement for compensation for her services would thus itself be tainted with the illegality of the sale. (*Wells* v. *Comstock,* 46 Cal.2d 528, 533 [297 P.2d 961].)

To repeat, respondent's right to recover a commission is based upon a sale of the entire issue of common stock to appellant or his nominee. This necessarily means a legal sale and, as we have shown, the sale was rendered illegal and therefore respondent is not entitled to recover.

In *List* v. *Republic Bond etc. Co.,* 94 Cal.App. 549 [271 P. 529], a licensed broker was denied a recovery on a sale of corporate stock where the terms of sale were other than those required under the permit. The broker did not know that the company had accepted real estate in part payment of the purchase price instead of 40 per cent cash and the balance in notes secured by the stock. The court said, at page 554: "Notwithstanding, then, the good faith of the plaintiff in demanding his share of the commissions on what be believed was a legitimate sale, he cannot be permitted to recover for any services he may have rendered in even unconsciously aiding the officers of the company in consummating an unlawful or void sale . . . [Citing cases.]"

The judgment is reversed.

Kaufman, P. J., and Shoemaker, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 9, 1962. Schauer, J., and White, J., were of the opinion that the petition should be granted.